UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose SOTO, also known as Lazaro
Sanchez, Defendant–Appellant.

No. 93–4036.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1994.

Decided Feb. 6, 1995.

David A. Glockner, Asst. U.S. Atty. (argued), Office of the U.S. Atty. Crim. Div., and Barry Rand Elden, Asst. U.S. Atty., Office of the U.S. Atty. Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Adam Bourgeois (argued), Chicago, IL, for defendant-appellant.

Before POSNER, COFFEY, and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

On April 25, 1991, a jury convicted Jose Soto (a.k.a. "Lazaro Sanchez") of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), as well as using and carrying a firearm during and in relation to the commission of a drug offense in violation of 18 U.S.C. § 924(c).[1]  Judge Bua, the original trial judge, sentenced Soto to 138 months in prison, pursuant to the United States Sentencing Guidelines.[2]  On Soto's original appeal we affirmed his convictions but remanded for resentencing to determine whether he was eligible for a two level reduction in his offense level as a minor participant. U.S.S.G. § 3B1.2(b).  *United States v. Gu-*

---

1. This case was originally assigned to Judge Nicholas J. Bua of the Northern District of Illinois who subsequently retired from the bench. Judge Bua presided over the trial and computed Soto's sentence under the United States Sentencing Guidelines.  On remand from an appeal to this court, the case was re-assigned to Judge George W. Lindberg of the Northern District of Illinois.  During the sentencing before Judge Lindberg, Soto represented Lazaro Sanchez as his real name.  Thus the district court entitled these proceedings *United States v. Lazaro Sanchez, a/k/a Jose Soto*.  The defendant in the transcript is referred to interchangeably as Lazaro Sanchez and as Jose Soto.  This appeal is entitled *United States v. Jose Soto, a/k/a Lazaro Sanchez,* and for the sake of uniformity we will continue to refer to the defendant Lazaro Sanchez as Jose Soto.

2. Judge Bua sentenced Soto to concurrent terms of 78 months in prison on Counts 1 and 2, the minimum term of imprisonment allowed by the guideline range, and a consecutive term of 60 months in prison on Count 3, for a total of 138 months imprisonment.

*tierrez,* 978 F.2d 1463 (7th Cir.1992).[3] On remand before Judge Lindberg, the district court conducted a second sentencing hearing and found that the evidence at trial and sentencing established that the defendant was not entitled to a two point reduction in the offense level for minor participation. The district court resentenced Soto to 138 months. The defendant appeals the resentencing. We affirm.

## I. BACKGROUND

We recite only those facts necessary for this appeal but point out that a more complete recitation of the facts may be found in *Gutierrez.* 978 F.2d at 1465–66. In July of 1990, as part of a Drug Enforcement Administration ("DEA") undercover operation, private investigator Domingo Alvarez, at the direction of the DEA, negotiated a purchase of two kilograms of cocaine from Jesus Padilla for $60,000. After the deal had been arranged, Alvarez and Padilla, his supplier, drove to a bar to meet Padilla's supplier, Felipe Martin. While driving to the bar, Alvarez advised Padilla that another man, Rafael Tovar, had the money for the cocaine.[4]

When the men arrived at the tavern, Padilla went inside to meet Martin. Padilla returned to Alvarez's car with Martin to inform Alvarez that the cocaine was ready and that he should get his friend, Tovar, and bring the money. After Alvarez returned with Tovar, Jose Medina arrived. All five men exited the bar and travelled to Medina's apartment, where the deal was to occur.

Agent Tovar accompanied Padilla, Martin, and Medina into the apartment while Alvarez remained outside with the money. Two men, later identified as Soto and Candelario Gutierrez, were in the apartment, seated on a couch in the living room immediately in front of a coffee table. Tovar asked Medina about these men and Medina replied, "They're nobody." At this time, Medina asked, "Where's the package?" Gutierrez replied, "In there" and pointed downward towards a compartment in the coffee table. Soto uncrossed his legs and pointed toward the compartment

with his foot and also stated, "Alli" or "In there." Medina opened the designated compartment, retrieved an opaque package, and removed two bricks of cocaine each weighing approximately two and one-half ounces. Tovar asked Gutierrez whether the cocaine was "rerock," a diluted form of cocaine, and Gutierrez replied that it was not. Agent Tovar asked Gutierrez how much cocaine they could provide him on a weekly basis for he wanted a steady source of cocaine. In reply, Gutierrez stated that they could provide ten to twelve kilograms per week.

After Agent Tovar had an opportunity to examine the cocaine, Medina directed him to get the money from Alvarez. Agent Tovar told Padilla to get Alvarez and the money, but Soto countermanded the order and stated, "No, just you go," directing Agent Tovar to get the money himself, whereupon the undercover agent explained that he would have to use the telephone to call Alvarez on his pager "and have him get up close to where I could go get the money." Soto responded that there was no telephone. At this time, Agent Tovar, with the assistance of an electronic device, signaled for other DEA agents to move in and make the arrest. DEA surveillance agents entered and placed Soto, Gutierrez, Martin, Medina and Padilla under arrest. A search revealed that Gutierrez was carrying a fully-loaded semi-automatic .45 pistol in the waistband of his pants, with the hammer pulled back and the safety lever on. The two bricks of cocaine withdrawn from the coffee table were recovered from Medina, each weighing approximately two and a half ounces.

Gutierrez and others were charged with a number of crimes in relation to this drug conspiracy. Soto was charged in a two-count indictment with possession of cocaine with intent to distribute and with conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Subsequently, a superseding indictment was filed adding a third count against Soto, charging him with using and carrying a firearm during and in relation to the commission of a drug offense in viola-

---

**3.** Although Soto was not named in this case, his conviction and sentence were reviewed by this court in *Gutierrez.*

**4.** Tovar was a DEA agent.

tion of 18 U.S.C. § 924(c). Soto elected to go to trial, and was convicted by a jury of each of the three counts.

Judge Bua of the United States District Court for the Northern District of Illinois presided over Soto's trial and the sentencing.[5] At sentencing, Soto requested a two to four level reduction in his offense level under Guideline § 3B1.2 [6] for his allegedly minimal or minor participation in the drug transaction. Judge Bua denied Soto's request for a four level reduction and found that "Soto's words and actions during the transaction indicated he had a knowledge of the participants and understood their activities, and therefore he was not a minimal participant." *Gutierrez,* 978 F.2d at 1470–71.[7]

Soto appealed his conviction and sentence. This court upheld his conviction but we held that it was "unclear from the record of the sentencing proceedings whether the district court credited that evidence with regard to Soto's eligibility as a minor participant." *Id.* at 1471. The court went on to state that we will not substitute our judgment for that of the district court and, therefore, vacated Soto's sentence and remanded it to the district court for the sole purpose of determining whether Soto was entitled to a two-level reduction. *Id.*

Subsequent to Soto's sentencing by Judge Bua, but before the appellate decision was rendered, Judge Bua retired from active status. Judge Lindberg was assigned to handle Soto's sentencing on remand from this court in *Gutierrez.* On the resentencing date, March 23, 1993, Judge Lindberg issued a specific and detailed minute order in which he denied Soto's request for a two-level reduction for minor participation in the offense and reimposed the same sentence as Judge Bua.

Soto appealed his resentencing before Judge Lindberg on the grounds that his presence was required.[8] Fed.R.Crim.P. 43. At the time of the resentencing, however, the defendant made no objection to the reassignment of the proceedings to Judge Lindberg. The government agreed with the defendant's motion to remand the case for resentencing before Judge Lindberg, for the limited purpose of allowing the judge to conduct a sentencing hearing in the presence of the defendant.

■ On December 9, 1993, Judge Lindberg conducted a resentencing hearing and after reviewing the presentence report, the sentencing memoranda filed by the parties, the arguments of counsel, and Soto's statement at the hearing, calculated Soto's sentence.[9] He found that Soto's offense level on

---

5. Judge Bua determined that Soto's offense level on Counts 1 and 2 was 28, meaning that the appropriate Guideline range was 78 to 97 months, and that Count 3 carried a mandatory consecutive sentence of five years (60 months). Judge Bua sentenced the defendant to concurrent terms of 78 months in prison on Counts 1 and 2, and a consecutive term of 60 months in prison on Count 3, for a total of 138 months in prison, followed by a term of four years' supervised release. Soto was also ordered to pay a mandatory special assessment of $50 for each conviction, for a total of $150.

6. Guideline § 3B1.2 provides:

Based on the defendant's role in the offense, decrease the offense level as follows:
(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
In cases falling between (a) and (b), decrease by 3 levels.

7. The defendant's role in the concerted activity is minimal if he is "plainly among the least culpa-

ble of those involved in the conduct of a group." *See* U.S.S.G. § 3B1.2, Application Note 1.

8. Judge Lindberg initially resentenced Soto in a written order.

9. As the district court embarked on sentencing, Soto's counsel, Mr. Bourgeois, interrupted and asked the court to grant Soto the right of allocution. The court granted counsel's request and the following colloquy ensued:

THE DEFENDANT: (Through interpreter) I just want to mention that at the time of the arrest, they never recovered any weapon. They didn't find it until we got here to downtown to the office.
MR. BOURGEOIS: *That is Gutierrez had it* in his waistband.
THE DEFENDANT: Yes, he told one of the agents that he had a weapon with him, and it was then when they started beating him up in the freeway.
MR. BOURGEOIS: Your Honor, we litigated that issue in the Seventh Circuit as to whether he is culpable for that. Of course, the

Counts 1 and 2 was 28, the same offense level computed by Judge Bua at the time of his first sentencing. Although Soto sought a two to three level reduction in his offense level pursuant to Guideline § 3B1.2,[10] Judge Lindberg refused to decrease the offense level. He concluded that Soto had a "sufficiently significant role in the offense to deny either minor or minimal" participant status. In reaching this conclusion, Judge Lindberg observed on the record that:

> [W]ith regard to the Court's evaluation of the evidence that's been presented essentially by agreement, you are—it is the view of this Court that your presence in the room while the drug transaction was going down was enough to discredit your protest that you were only there to repair a car. That is not to say that you may not have had car repair as part of your business, but the evidence would appear to this Court to suggest that by your agreement and the agreement of Mr. Gutierrez, you were to be present and, as it turned out, participate. And even if that was not enough, the evidence further disclosed that you participated in directing the purchasers to the drawer in the coffee table where the two kilos were stored.
>
> Now there is some suggestion that the mere flip of a foot is hardly a significant—sufficiently significant role in the offense to deny either minor or minimal. However, the Court views a flip of the foot under those circumstances where the foot was essentially addressing the location of two kilos of cocaine speaks volumes. Very importantly to the Court, you countermanded the intention of one of the undercover agents who was going to use his pager to summon, I believe, it was Agent Alvarez outside, another agent in any event, I think

he is a contract agent, I am not sure, who possessed the money, directing the undercover agent instead to go outside to find the person with the money. Now that alone is more than sufficient indication to this Court that you had a management role in the transaction as it was you and not Gutierrez who countermanded the undercover agent's intention to signal for the money with his pager instead of doing it personally.

> Again, this conduct was totally inconsistent with being present for the sole purpose of repairing a car and demonstrates in the opinion of the Court more than a minor role in the offense. The latter conduct demonstrates a controlling role in the transaction inconsistent with the description of the minor role.

Based on these findings, Judge Lindberg resentenced Soto to concurrent terms of 78 months imprisonment on Counts 1 and 2, a consecutive term of 60 months imprisonment on Count 3, for a total of 138 months imprisonment, four years supervised release, and a mandatory special assessment of $50 for each count of conviction.

## II. ISSUE

Whether the district court properly denied Soto's request for a two point reduction of his offense level under § 3B1.2(b) of the Sentencing Guidelines?

## III. DISCUSSION

On appeal, Soto contends that the district judge erred in failing to reduce his offense level pursuant to Guideline § 3B1.2 and raises three arguments in support of this contention: (1) that Judge Lindberg's sentence is not entitled to deference under the clearly

---

Seventh Circuit has already ruled. So his absence of knowledge doesn't excuse. I have explained that to him.

THE DEFENDANT: No, that is all.

THE COURT: All right. Thank you.

**10.** Soto's contention that he is entitled to a three point reduction of his offense level because his conduct falls between minimal and minor participation is clearly outside the scope of these proceedings. We affirmed Soto's conviction and the determination of his base-level offense and remanded his case to the district court *solely* "for

its consideration whether [the defendant] is eligible for a two-level reduction as a minor participant," which it declined to grant. *See Gutierrez*, 978 F.2d at 1471. Soto cannot now request a three point reduction on the theory that his role in the offense ranged from minor to minimal. Therefore, we hold that the only issue properly before Judge Lindberg on remand, and likewise before this court on appeal, was whether Soto is eligible for a two-level reduction as a minor participant under Guideline § 3B1.2(b).

erroneous standard because he was not the presiding judge at the original trial; (2) that Judge Lindberg relied upon factual errors when determining Soto's sentence; and (3) that even if Judge Lindberg's sentence is entitled to full deference, in view of the facts of this case, his refusal to grant a § 3B1.2 adjustment is clearly erroneous.

### A.

■ On appeal, we generally review the district court's § 3B1.2 determination under the clearly erroneous standard. *United States v. Scroggins,* 939 F.2d 416, 423 (7th Cir.1991). "The district court's sentence thus will be affirmed if it results from a proper application of the sentencing guidelines to facts not found to be clearly erroneous." *United States v. Herrera,* 878 F.2d 997, 1000 (7th Cir.1989). "A finding of fact is clearly erroneous only if, after reviewing the entire evidence, we are 'left with the definite and firm conviction that a mistake has been committed.' " *Id.* "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.*

■ Soto argues that Judge Lindberg's sentence is not entitled to deference under the clearly erroneous standard because he did not preside at trial, thus he had neither the benefit of hearing the evidence nor of assessing the credibility of the witnesses. The Federal Rules of Criminal Procedure, however, codify the principle that when necessary, a judge different from the one who presided at trial may preside at sentencing. Fed.R.Crim.P. 25(b).[11] Once chosen, "a successor judge is given broad discretion in determining whether he properly can perform his sentencing duties in a case upon which he did not preside at trial." *United States v. Whitfield,* 874 F.2d 591, 593 (8th Cir.1989).

Soto argues that just as appellate courts review a trial court's "cold" record, Judge Lindberg's sentencing decision was also made on a "cold" record and for that reason should not be given deference under the clearly erroneous standard. This is a question of first impression, and implicates considerations of judicial independence as well as the effective and expeditious administration of the business of the courts. As a preliminary matter, we note that the defendant did not challenge the assignment of Judge Lindberg to replace Judge Bua and that, in accordance with the local rules of the court and Rule 25(b), the transfer of the case to Judge Lindberg was duly authorized and proper in all respects because the trial judge was no longer available.

This court has previously upheld the sentencing of a defendant by a successor judge in conformity with Rule 25(b). *See United States v. Niemiec,* 611 F.2d 1207, 1209 (7th Cir.1980). In that case, the defendant, Niemiec, was convicted of perjuring himself before a grand jury in violation of 18 U.S.C. § 1623, and sentenced to one year of imprisonment. The trial judge, Judge McNagny, was unable to impose sentence due to an illness and subsequent surgery. The case was reassigned to Judge Eschbach prior to sentencing. On appeal, Niemiec argued that he should have been granted a new trial when Judge McNagny became unavailable for sentencing. We rejected this argument and held that Judge Eschbach properly exercised his discretion in sentencing Niemiec pursuant to Rule 25(b). We stated that:

> This case was particularly proper for disposition by a successor judge. Contrary to the defendant's characterization, this case was not complex. Judge McNagny, who had heard all of the testimony, ruled on defendant's post trial motions for relief. Judge Eschbach, prior to sentencing, reviewed the files and records in the case, including the presentence report, and

---

11. Fed.R.Crim.P. 25(b) provides in relevant part that:

> If by reason of absence, death, sickness or other disability the judge before whom the defendant has been tried is unable to perform the duties to be performed by the court after a verdict or finding of guilt, any other judge

regularly sitting in or assigned to the court may perform those duties; but if that judge is satisfied that a judge who did not preside at trial cannot perform those duties or that it is appropriate for any other reason, that judge may grant a new trial.

had met with the same sentencing council that had consulted with Judge McNagny regarding the proper disposition of this matter. Judge Eschbach conferred with Judge McNagny and indicated that the sentence imposed was in accord with that which Judge McNagny desired to be given. Lastly, defendant was sentenced to far less than the statutory maximum allowable. In these circumstances, no abuse of discretion has been shown.

*Niemiec,* 611 F.2d at 1212 (citation omitted).

The same reasoning applies to the case before us. This case was not a complicated one, for the appellate court limited Judge Lindberg's authority to the question of whether the defendant's role in the cocaine transaction was a minor one. Prior to sentencing, in order to properly assess Soto's role in the conspiracy, Judge Lindberg reviewed the presentence report of the U.S. Probation Officer, the relevant sections of the record, our decision in *Gutierrez,* as well as the sentencing memoranda submitted by counsel.[12] Moreover, he had the opportunity to evaluate Soto's credibility, including his statements at the sentencing hearing.[13] In passing sentence on Soto, Judge Lindberg decided not to depart from the sentence that was originally imposed by Judge Bua and imposed like terms of confinement, supervised release and special assessments. Finally, the sentence that he imposed was the minimum term of imprisonment allowable under the applicable guideline range. We hold that the sentence Judge Lindberg imposed was proper and that the defendant has failed to establish that the Judge's decision amounted to an abuse of discretion.

We now turn to the question of whether Judge Lindberg's decision should be reviewed for clear error. We reiterate that Soto did not challenge the propriety of Judge Lindberg's reassignment to his sentencing. Once a successor judge has been properly assigned pursuant to the local rules of the court and Rule 25(b), his decision or judgment is entitled to deference under the clearly erroneous standard. To do otherwise would disrupt the administration of justice.

■ Accordingly, we conclude that the factual determinations of a duly assigned successor judge are to be reviewed under the same standard as that of the original trial judge. We hold that Judge Lindberg's sentence is entitled to deference under the clearly erroneous standard. Whether Soto's role in the drug transaction ranged from minor to minimal within the meaning of § 3B1.2 was a question of fact for Judge Lindberg to resolve and "a reviewing court's function 'is not to decide factual issues *de novo.*'" *Herrera,* 878 F.2d at 1000. The sentence thus will be affirmed if it results from a proper application of § 3B1.2 to facts not found to be clearly erroneous.

### B.

■ Soto's next contention is that the district judge relied upon factual errors when imposing his sentence. First of all, we point out that Soto failed to object to these alleged errors at sentencing and has thus, waived this argument on appeal. *See United States v. Rivero,* 993 F.2d 620, 623 (7th Cir.1993) ("A defendant who fails to raise a sentencing challenge before the sentencing court waives the issue on appeal."). We will review a waived issue only for plain error. Fed. R.Crim.P. 52(b); *United States v. Walker,* 9 F.3d 1245, 1249 (7th Cir.1993), *cert. de-*

---

12. *See* Judge Lindberg's Memorandum Opinion and Order, 1993 WL 86796 (N.D.Ill.).

13. Soto contends that Judge Lindberg did not hear from the defendant until he had clearly made up his mind regarding the decision he was going to make, and then refused to consider Soto's allocution in sentencing him. We hold this claim to be without merit. Judge Lindberg did, in fact, grant Soto the right of allocution prior to imposing sentence. We note, however, that Soto's remarks failed to address the issue before the court, *i.e.,* Soto's role in the drug transaction. Instead, Soto structured his argu-

ment to deal with merely his possession of the locked and cocked, automatic .45 pistol found in the waistband of Gutierrez's pants, and implied that DEA agents had planted it. Soto's counsel, Mr. Bourgeois, freely admitted at the hearing that his client's statements constituted an impermissible attempt to reopen the issue of his culpability on the firearm charge, since that issue had previously been decided by this court. The record fails to support the defendant's statements that Judge Lindberg's mind was already made up.

*nied,* —— U.S. ——, 114 S.Ct. 1863, 128 L.Ed.2d 485 (1994). A plain error is one that is "particularly egregious," *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982), and "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano,* —— U.S. ——, ——, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993).

Soto's initial argument is that the district judge made a mistake when he found that Soto "countermanded the intention of one of the undercover agents who was going to use his pager to summon ... another agent ... who possessed the money, directing the undercover agent instead to go outside to find the person with the money." Soto contends that the district judge erred because there was no pager, nor any intent on the part of the agent to signal for the money.

■ Soto argues that Judge Lindberg made a material misstatement of fact when he said that Agent Tovar was going to signal for another agent to bring him money for the cocaine. It is true that Tovar had no intention to signal for money, but rather, the signal was to alert DEA surveillance agents to enter and arrest the defendants. It is also true that the district judge misspoke when he stated that Tovar had a pager, when what he actually wanted to do was use the telephone to page an agent outside. Even if we accept Soto's contention that the district judge erred in stating that Agent Tovar intended to signal for the money with a pager, minor variances of this nature are obviously inconsequential.

The important point of that exchange, for purposes of sentencing, was that Soto countermanded Agent Tovar's plan to send for the money, and then in an open display of his authority in the conspiratorial scheme, directed the undercover agent to get the money himself. We have no doubt that the district judge correctly attributed the countermanding of the undercover agent's intention to send for the money to Soto. Tovar asked to use the telephone so that he could call Alvarez on his pager, but Soto stated, "No, just you go," directing that undercover Agent Tovar should go outside to get the money, rather than have another person bring it up

to the apartment. Thus the district judge's misplaced reference to the pager was of no importance in determining the proper sentence.

■ Soto also argues that the district judge relied on a material misstatement of fact made by the prosecutor. He claims that the prosecutor said that Agent Tovar asked "Where's the cocaine?" when he entered the room in which Soto and Gutierrez were seated, when, in fact it was Medina who asked "Where's the package?" Soto also argues that the district judge was further misled by the prosecutor concerning Soto's role in the drug transaction when the prosecutor stated that Soto gestured toward the location of the cocaine to the undercover agent, when all he did was mimic Gutierrez and flip his foot in the direction of the coffee table.

We disagree with Soto's contentions and find no problem with the prosecutor's statement. While the prosecutor stated that Soto pointed out the location of the "cocaine" to the undercover agent, rather than the location of the "package," the package and the cocaine were one and the same. The prosecutor's remark was thus an accurate rendition of the facts, and should not be considered a material misstatement. Furthermore, Medina may have asked where the package was, but he made the inquiry in order that the package might be given to Tovar. The defendant is trying to place himself in a better light by playing down his part in the conspiratorial scheme, but his authority to give directions and his knowledge of where the cocaine was being stored, are clearly contrary to his protestations. Thus the district judge was not misled by the prosecutor's remark, and did not err in finding that Soto pointed to the location of the cocaine.

Soto also argues that Judge Lindberg was unfamiliar with the prior proceedings because of his initial statement that he (temporarily) did not recollect the original sentence imposed by Judge Bua or how it had been determined. It is important to note, however, that at that time, Judge Lindberg immediately refreshed his recollection and familiarized himself with the sentence and the method of its calculation. Soto does not

argue that Judge Lindberg improperly applied the sentence imposed on the defendant. Thus, we are convinced that Judge Lindberg's statement should have no impact on the standard of review employed in this case.

It is quite possible that due to the heavy workload, a condition well known to all judges in the Northern District of Illinois, Judge Lindberg made a slip of the tongue or asked questions about the previous sentencing in order that he might refresh his memory and orient himself to the case at hand. Because of a mere human slip of the judge's tongue, the defendant would have us believe that Judge Lindberg did not reach a proper result. We wish, however, to call attention to the delineated and specific order Judge Lindberg issued at the first sentencing hearing. 1993 WL 86796 (N.D.Ill.). Obviously Judge Lindberg, a well prepared judge, read all the pertinent documents before sentencing and became intimately familiar with the relevant facts of a case as evidenced by his detailed and specific order. His minute order is documentary proof that he possessed a clear and direct knowledge of the facts of the case that only a scrupulous review of the original trial record would produce.[14] Accordingly, we hold that Judge Lindberg was well acquainted with all the facts of the record and relied on no material errors of fact when he denied Soto the § 3B1.2 reduction.

### C.

■ Finally, Soto argues that in view of the facts of this case, Judge Lindberg's refusal to grant a § 3B1.2 adjustment is clearly erroneous. When a defendant requests a decrease in his offense level, he has the burden of demonstrating that he is eligible for the reduction by a preponderance of the evidence. *United States v. Villasenor,* 977 F.2d 331, 336 (7th Cir.1992). This court has emphasized that the application of Guideline § 3B1.2 "is heavily dependent upon the facts of the particular case." *United States v. Davis,* 938 F.2d 744, 747 (7th Cir.1991). "The controlling standard for an offense level

reduction under this section is whether the defendant was substantially less culpable than the conspiracy's other participants." *United States v. DePriest,* 6 F.3d 1201, 1214 (7th Cir.1993); *see also* U.S.S.G. § 3B1.2, Background Note. In *United States v. Kerr,* 13 F.3d 203 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1629, 128 L.Ed.2d 353 (1994), this court had an opportunity to comment on Guideline § 3B1.2 and stated that:

> Whether one is a minor or minimal participant or a plain vanilla criminal is answered by the facts of the case and there is no formulaic solution. If everyone has an equal role, no one's offense level can be diminished, but the fact that one plays a much lesser role than another does not mean that one is a minor participant. The boss's trusted secretary through the years is crucial to the enterprise, even where the boss decides everything and gives all the orders. If the enterprise is criminal the secretary is a lesser participant but not a minor one.

*Id.* at 206. "A defendant's relative degree of culpability, therefore, is of primary consideration." *DePriest,* 6 F.3d at 1214. "However, '[a] court cannot determine a defendant's culpability by referring to some abstract metaphysical standard; it must look to the defendant's activities and the role he played in the conspiracy.'" *Id.* (quoting *United States v. Cea,* 963 F.2d 1027, 1032 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 281, 121 L.Ed.2d 208 (1992)).

Soto maintains that he did not know of the conspiracy to distribute cocaine nor did he agree to participate in it. He notes that he was not involved in the pre-deal negotiations; he did not direct the agents to Medina's apartment; Medina referred to him as a "nobody;" he was not implicated by his co-defendants; he did not know Gutierrez was armed; he did not know what was in the package; he did not reply to Agent Tovar's questions about the cocaine; and he only mimicked the words and actions of others. Soto also contends that he went to Medina's

---

**14.** Notably, in his order, Judge Lindberg specifically states that "the court has considered the file in this case, the presentence report of the U.S. Probation Office, the relevant record of proceedings and the opinion of the 7th Circuit. In particular, the court has considered the evidence of defendant's role in the instant offense."

apartment for the sole purpose of repairing a car, and that Gutierrez was his cousin, thus supplying a further explanation for his presence. In sum, he argues that there is insufficient evidence in the record to point to his participation in other than a minor or lesser role.

Soto's contention that he was nothing but an innocent bystander to the drug transaction is without merit. When Medina asked about the location of the package of cocaine, Soto, displaying his knowledge of and involvement in the conspiracy, answered "Alli" or "In there," and then pointed with his foot to the compartment of the table where the cocaine was found. Soto tried to gloss over both his display of knowledge of the location of the drugs in the coffee table, as well as his direction to the buyer by contending that he merely imitated Gutierrez's words and actions, and that there is no evidence he knew what was in the package. Neither this court nor the district judge is required to give credence to his self-serving assertions. *See Gutierrez,* 978 F.2d at 1479. Soto would not have interjected himself into the conversation by first speaking and then pointing to the specific location of the drugs unless he knew the whereabouts of the cocaine. Soto indicated by both voice and gesture that the opaque package containing the cocaine was inside the coffee table. It is irrelevant that Soto's comment merely repeated what Gutierrez said. Likewise, it is irrelevant that in the "who gets the money" incident, Medina made the initial demand on the agent. What is important is the display of his knowledge and authority to countermand Agent Tovar's intention to send for the money rather than to get it personally. As the district judge noted, "a flip of the foot under those circumstances where the foot was essentially addressing the location of the two kilos of cocaine speaks volumes."

This court previously rejected Soto's contention that he was ignorant of the conspiracy to distribute cocaine and did not agree to participate in it in *Gutierrez,* when we upheld his conspiracy conviction. We explained that:

> Agent Tovar tested the cocaine in Soto's presence, and its price and quality were

discussed. Agent Tovar testified at trial that Soto did not appear surprised about the transaction. When Agent Tovar asked Padilla to get Alvarez and the money, Soto directed Agent Tovar to get the money. The jury could infer from the evidence that Soto knew there was an agreement to sell cocaine and that he agreed to participate in that sale. *See [United States v.] Townsend,* 924 F.2d [1385] at 1390 [ (7th Cir. 1991) ] (jury could reasonably infer defendant's participation in conspiracy from circumstantial evidence); [*United States v.*] *Diaz,* 876 F.2d [1344] at 1354 [ (7th Cir. 1989) ] (defendant was present during transaction, brought drugs to the deal, and observed transaction take place); *United States v. Blanton,* 884 F.2d 973, 978 (7th Cir.1989) (defendant carried drugs and drug money, and made statements concerning drug dealing). Further, it could reasonably be inferred that Soto and Gutierrez brought the cocaine to the apartment—they were in the apartment when the other men arrived and they knew the location of the cocaine. ' "There is no requirement that the participants in the plan personally know the individuals involved as long as the conspiracy continues and the goal is to achieve a common objective." ' *Diaz,* 876 F.2d at 1352 (quoting *United States v. Boucher,* 796 F.2d 972, 975 (7th Cir.1986)).

The evidence indicates that Soto was not a mere bystander '[W]hile "mere presence at the scene of the crime or mere association with conspirators will not themselves support a conspiracy conviction ... presence or a single act will suffice if the circumstances permit the inference that the presence or act was intended to advance the ends of the conspiracy." ' *Diaz,* 876 F.2d at 1352 (quoting *United States v. Mancillas,* 580 F.2d 1301, 1308 (7th Cir.), *cert. denied,* 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978)); *Blanton,* 884 F.2d at 979. Soto stated and pointed to the location of the cocaine, witnessed the transaction, and instructed Agent Tovar to get the money for the cocaine.

Soto also argues that he was at Medina's apartment because Gutierrez is his cousin. The fact that Soto and Gutierrez are cous-

ins does not invalidate Soto's guilt. *See Townsend*, 924 F.2d at 1389 (the evidence need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt); *Diaz*, 876 F.2d at 1353 (same). This is not a case where the 'familial connections' principle applies, *see United States v. de Soto*, 885 F.2d 354, 367 (7th Cir.1989) (familial association implies close relationship such as husband and wife, or siblings), and Soto was not coincidentally visiting a relative's home during a drug deal—the sale occurred at Medina's apartment.

*Gutierrez*, 978 F.2d at 1469–70.

■ With respect to Soto's argument that the evidence was insufficient to demonstrate that he possessed the cocaine, we stated that:

> We disagree. Reasonable inferences can be drawn from the record indicating that Soto exhibited possession and control over the cocaine. *See United States v. Garrett*, 903 F.2d 1105, 1112 (7th Cir.) (constructive possession is sufficient to support a conviction under 21 U.S.C. § 841(a)), *cert. denied*, 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990). Soto sat near the cocaine when the other men arrived at the apartment; he demonstrated where the cocaine was located; he instructed that Agent Tover [sic] get the money to pay for the cocaine; and he was present during the entire transaction. Moreover, it could be inferred that Soto and Gutierrez brought the cocaine to the apartment."

*Gutierrez*, 978 F.2d at 1470. Nothing about these facts suggest that Soto is "substantially less culpable than the conspiracy's other participants." *DePriest*, 6 F.3d at 1214.[15] Once involved in a conspiracy,

> "the overt acts of one conspirator are attributable to all co-conspirators, [and] ... other acts in furtherance of the conspiracy are likewise attributable to the others for the purpose of holding them responsible for the substantive offense.... [A] co-conspirator may be held liable unless the crime could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement."

*Gutierrez*, 978 F.2d at 1468. Soto tries to downplay his responsibility in this conspiratorial scheme, but in fact, among other examples of his knowledge and authority in the scheme, the evidence reveals that it was Soto and not Gutierrez who ordered the undercover agent to get Alvarez and the money. This conduct is sufficient to defeat Soto's assertion that Gutierrez and the other co-conspirators carried out the deal and Soto was a mere bystander, and convinces us that the district court reasonably concluded that Soto had a controlling role in the offense, and therefore was not substantially less culpable than the other participants.

15. The cases Soto relies on to support a reduction can be distinguished from this case because they are all reviews of sentence reduction already granted by the district court. These determinations, like the sentence imposed by Judge Lindberg, are all based on the particular facts of each case, and once a judge decided to grant a reduction based on these facts, the decisions were entitled to the same deference we are granting Judge Lindberg, a review only for clear error. *See United States v. Johnson*, 997 F.2d 248 (7th Cir.1993) (approving a three level reduction for a defendant who assisted in harvesting large quantities of marijuana and delivered a substantial sum of money in order to pay for a shipment); *United States v. Westerman*, 973 F.2d 1422 (8th Cir.1992) (holding that the district court's decision to grant a two level reduction for a defendant who knew that an arson was going to be committed for insurance proceeds and drove with one of the arsonists to the scene of the arson was clear error because a four level adjustment was warranted); *United States v. Hagan*, 913 F.2d 1278 (7th Cir.1990) (approving a two level reduction for a defendant who lived at a farm where marijuana plants were being cultivated and picked weeds around the plants); *United States v. Valencia*, 907 F.2d 671 (7th Cir.1990) (approving a minor role adjustment for a defendant who helped construct a sophisticated storage cabinet which he knew would thereafter be used to hold drugs); *United States v. Franklin*, 902 F.2d 501 (7th Cir.1990), *cert. denied sub nom., Mann v. United States*, 498 U.S. 906, 111 S.Ct. 274, 112 L.Ed.2d 229 (approving a minor role adjustment for a defendant who was involved in at least four incidents of money laundering, allowed two vehicles purchased with drug money to be titled in her name, and opened safety deposit boxes in her name in order to store drug money); *United States v. Guerrero*, 894 F.2d 261 (7th Cir.1990) (approving a two level reduction for a defendant who made numerous cocaine deliveries).

■ Accordingly, we hold that the district judge could reasonably deduce from the evidence presented that Soto knew there was an agreement to sell cocaine and that he had agreed to participate in the sale. The district judge saw fit not to believe Soto and we are in agreement because of our reading of the record as well as the well-settled law that "[d]eterminations of credibility are distinctly decisions to be made by the district court." *Villasenor*, 977 F.2d at 336. Moreover, in *Gutierrez*, we implicitly rejected Soto's theory that he went to Medina's apartment merely to repair a car. *Gutierrez*, 978 F.2d at 1469. It is highly implausible that Gutierrez, an armed participant in a cocaine transaction involving tens of thousands of dollars in cash, brought an innocent bystander to witness the deal. *See United States v. Perry*, 747 F.2d 1165, 1169 (7th Cir.1984) ("it strikes us as incredible that [a drug dealer] would have a person accompany him to a drug deal ... where that person did not have [the dealer's] utmost trust and confidence"). Where, as here, " 'there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.' " *Herrera*, 878 F.2d at 1000.

Judge Lindberg drew the permissible inference that Soto was integrally involved in this drug conspiracy and properly refused to find that he was only a minor participant. Soto has failed to establish by a preponderance of the evidence that the district judge committed clear error in refusing to grant him a § 3B1.2 reduction in his offense level.

Accordingly, the decision of the district court is

AFFIRMED.