86 F.3d 1158
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF America, Plaintiff-Appellee,
v.
Oluwajuyin ALATISE & Clement Abandy, Defendants-Appellants.
 Nos. 95-2108, 95-2812.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 19, 1996.
Decided May 17, 1996.
 
 Before POSNER, Chief Judge, and KANNE and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Oluwajuyin Alatise and Clement Abandy pleaded guilty to conspiring to possess heroin with intent to distribute it. 21 U.S.C. § 846, 18 U.S.C. § 2. Abandy subsequently sought permission to withdraw his plea, but the district court refused, a decision Abandy challenges in this appeal. Both defendants also challenge the sentences they received under the Sentencing Guidelines, arguing that they should have been classified as minimal rather than minor participants in the conspiracy. Finally, Alatise maintains that he should have received a three rather than a two point reduction to his base offense level for acceptance of responsibility. We affirm.
 
 I.
 
 2
 United States customs agents in Honolulu apprehended two British women attempting to smuggle seven kilograms of heroin into Hawaii from the Philippines. With the couriers' cooperation, the government decided to make a controlled delivery of the heroin. The women registered at the Ambassador Hotel in Honolulu, as their contact in England had instructed them. Two days later, they proceeded to Chicago, and checked into the Intercontinental Hotel. Throughout this period, customs agents observed Alatise, a British national, performing counter-surveillance of the women. He waited for them outside customs at the airport, checked into the same hotel, where he observed their room from his balcony and once put his head up against the door of their room, and, when the women changed their flight to Chicago, Alatise changed his own reservation as well, so he could be on the same plane. In Chicago, he followed them to their hotel and checked in. Both in Honolulu and Chicago, Alatise made and received calls from a man in England identified as Culpepper.[1] When Alatise was subsequently arrested he was in possession of Abandy's business card.
 
 
 3
 Abandy contacted the couriers in Chicago. He came to their room, looked around, and left. He returned shortly with $38,000, which he gave to the couriers in exchange for the suitcases. At the hotel, Abandy pulled the luggage tags off the suitcases, opened one of the bags, and felt the lining where the heroin was concealed. As he prepared to leave the room, Customs Agents arrested him. Abandy told the agents he was to be paid up to five thousand dollars to pick up the suitcases, which he suspected contained drugs. A subsequent search of Abandy's business uncovered mail listing the Chicago hotel numbers of the couriers and Alatise.
 
 
 4
 Abandy and Alatise were indicted for conspiring and attempting to possess heroin with intent to distribute it. On the morning that their trial was scheduled to begin, Alatise pleaded guilty to conspiracy. Abandy proceeded to trial but informed his attorney that he did not intend to testify on his own behalf. After the first day of trial, Abandy maintains that his attorney told him he could get off with time served if he pleaded guilty. His attorney claims that he discussed with Abandy the potential effect of his failure to testify, the possibility of pleading guilty, the likely differences between a sentence Abandy might receive if he pleaded guilty and if he was convicted at trial, and the "safety valve" provision of the Sentencing Guidelines under which Abandy could receive less than the ten-year statutory mandatory minimum for the offense. Abandy agreed to plead guilty, without a plea agreement, before the trial resumed. The district court, after questioning Abandy about his decision at length, accepted the plea.
 
 
 5
 Shortly thereafter, Abandy changed his mind, prompting his attorney to withdraw because counsel believed Abandy was accusing him of misconduct. In a letter to the court, Abandy asked to withdraw his guilty plea on the ground that his attorney improperly pressured him to plead guilty. Following a two-day evidentiary hearing, the district court determined that Abandy had pleaded guilty knowingly and voluntarily, and had not established a just reason to permit withdrawal of the plea. The district court subsequently sentenced Abandy to 121 months in prison. Alatise received a 97-month sentence, at the low end of the applicable Guidelines range.
 
 II.
 
 6
 Abandy argues that the district court should have allowed him to withdraw his guilty plea pursuant to Fed.R.Crim.P. 32(e). As he testified at the evidentiary hearing below, Abandy contends that his attorney improperly pressured him into pleading guilty, playing on the financial problems that Abandy's family was enduring while he was in prison, maneuvering his wife into urging Abandy to enter a plea, and assuring Abandy that if he pleaded guilty, the attorney could work with the judge and prosecutor so that Abandy, like one of the couriers, would be sentenced to time served. He was cooperative and acquiescent at the Rule 11 hearing before the judge, Abandy maintains, because he assumed he would soon be set free to return to his family. Only when officials returned him to the Metropolitan Correctional Center did he realize that he might face further imprisonment. Because he would not have pleaded guilty if his attorney had not wrongly assured him he would be released with time served, Abandy argues that his guilty plea was not knowingly and intelligently made, and that the district court abused its discretion in refusing to allow him to withdraw the plea. See United States v. Malave, 22 F.3d 145, 147 (7th Cir.1994).
 
 
 7
 Abandy ignores the fact that he was not the only one to testify at the evidentiary hearing. His trial counsel also testified, flatly denying Abandy's accusations of misconduct, and explaining that after the first day of trial, Abandy had decided that he would not testify on his own behalf, then had decided to plead guilty after counsel explained to him the likely consequences of that decision, taking into consideration the court's options under the Sentencing Guidelines. Thus, the evidentiary hearing amounted to a swearing match. The district court believed the lawyer, and "[i]n a swearing contest, the trial judge's ... choice of whom to believe is conclusive on the appellate court unless the judge credits exceedingly improbable testimony." United States v. Cardona-Rivera, 904 F.2d 1149, 1152 (7th Cir.1990).
 
 
 8
 In the case at bar, the district court chose to believe a version of events that is highly plausible. For example, in response to extensive questioning by the district court upon entering his plea, Abandy himself denied being pressured, lured, or tricked into pleading guilty, even when the court told him that he faced a mandatory minimum sentence of ten years. He expressly stated that nothing had happened while the trial was in recess to cause him to change his mind about pleading. A defendant's statement at a Rule 11 hearing that a plea is freely given generally justifies the district court in discrediting a subsequent contradictory claim offered to support withdrawal of the plea. United States v. Messina, 55 F.3d 1241, 1248 (7th Cir.1995). Moreover, when Abandy first wrote to the district court seeking to withdraw his guilty plea, he made no mention of a promise that he would be sentenced to time served. Because we must accept the district court's conclusion that Abandy's version of events was not credible, we conclude that Abandy has not established a fair and just reason for withdrawing his plea. United States v. Groll, 992 F.2d 755, 758 (7th Cir.1993). Consequently, we find no abuse of discretion in the district court's decision to hold Abandy to his plea of guilty. Id.
 
 III.
 
 9
 In sentencing the defendants, the district court determined that each was eligible under the Sentencing Guidelines for a two-point reduction in their base offense levels, because they played only minor roles in the conspiracy. U.S.S.G. § 3B1.2(b). Both defendants counter that they played a minimal, rather than a minor role, and that they should therefore have received greater reductions. U.S.S.G. § 3B1.2(a). The district court's determination of a defendant's role in the offense is a finding of fact which we review for clear error. United States v. Soto, 48 F.3d 1415, 1420 (7th Cir.1995). No such error is apparent here.
 
 
 10
 The gravamen of Abandy's argument is that he was the least culpable of the conspirators, simply acting as a go-between for the couriers and a local distributor. Certainly comparative roles are important in determining whether a defendant is entitled to a downward reduction. United States v. Corrall-Ibarra, 25 F.3d 430, 439 (7th Cir.1994). Nonetheless, just because other members of the conspiracy played much bigger roles does not mean that one is a minimal, or even minor, participant. Soto, 48 F.3d at 1423; United States v. Burnett, 66 F.3d 137, 140 (7th Cir.1995) ("Henchmen and factotums ... do not receive automatic reductions"). Abandy knowingly and for profit exchanged a large sum of cash for the suitcases, which he knew to contain illegal narcotics. He conceded to the agents who arrested him that he suspected the suitcases contained drugs, and the government presented credible evidence that Abandy used his legitimate business, a travel agency, as a conduit for the drug-distribution network. A person who is not the driving force behind a crime, but nonetheless plays an integral role, is not entitled to have his offense level reduced under § 3B1.2(a). United States v. Nobles, 69 F.3d 172, 190 (7th Cir.1995). Given these facts, we cannot say that the district court clearly erred in finding that Abandy was a minor rather than minimal participant in the drug deal.
 
 
 11
 Alatise, in contrast, argues that his role was minimal because he was an observer who never touched the drugs and who had no control over the unfolding transaction. In considering a defendant's role in the offense, the district court may consider not only the facts on the record but logical inferences drawn therefrom. None of the parties dispute that the conspiracy was masterminded from England. It is logical to infer from Alatise's close surveillance of the couriers, and frequent telephone calls to England, that the leaders of the conspiracy did not trust the couriers, but did trust Alatise, and sent him as an observer/reporter to make sure the deal came off as planned, and to keep them informed of its progress. That Alatise did not directly interact with other lower-level conspirators, or personally buy, smuggle or sell the drugs, does not mean that his actions did not directly facilitate the overarching conspiracy. See Soto, 48 F.3d at 1425. It was not clear error for the district court to conclude from his actions that Alatise played more than a minimal role in the drug conspiracy.
 
 
 12
 Alatise also maintains that the sentencing court wrongly attributed to him all seven kilograms of heroin. We review for plain error a sentencing challenge which a defendant fails to raise before the sentencing court. Fed.R.Crim.P. 52(b); United States v. Edwards, 77 F.3d 968, 977 (7th Cir.1996), petition for cert. filed (U.S. April 8, 1996). "A plain error is one that is particularly egregious and seriously affects the fairness, integrity, or public reputation of judicial proceedings." Soto, 48 F.3d at 1422 (internal quotations omitted).
 
 
 13
 No such error is apparent here. The evidence indicates that Alatise performed counter-surveillance to ensure that a particular drug deal came off as planned. That is sufficiently direct involvement to hold Alatise accountable for all the heroin that the government seized. See United States v. Velasquez, 67 F.3d 650, 654 (7th Cir.1995); U.S.S.G. § 1B1.3, Application Note 2. And even if Alatise were not directly involved, he knew that he was being paid to observe and report the progress of an international drug deal, where a pair of couriers were literally being sent around the world, given detailed cover activities, and put up at posh hotels to boot. The amount of money spent on the elaborate operation would suggest to any reasonable person that the conspiracy was not dealing in paltry amounts of drugs. Consequently, the district court did not plainly err in concluding that Alatise was accountable for all seven kilograms of heroin.
 
 
 14
 Finally, Alatise claims that the district court should have given him an additional one-point reduction in offense level for informing the government of his involvement in the offense in a timely fashion. U.S.S.G. § 3E1.1(b)(1). The district court's determination of a defendant's acceptance of responsibility for his crime is a finding of fact which we review for clear error. United States v. Covarrubias, 65 F.3d 1362, 1367 (7th Cir.1995).
 
 
 15
 The government concedes that Alatise, shortly after his arrest, told the government what he knew about the conspiracy, including the names of other conspirators in England. Indeed, the government did not dispute that the information Alatise provided entitled him to avoid a ten-year mandatory minimum sentence. U.S.S.G. § 5C1.2(5). Nonetheless, the fact that a defendant qualifies for a reduction in sentence under § 5C1.2 does not mandate an additional reduction under § 3B1.1(b)(1). A defendant merits reduction under § 3E1.1(b) when he provides sufficiently complete information concerning his own involvement in the offense that he "ensures the certainty of his just punishment in a timely manner." U.S.S.G. § 3B1.1, Background. Although Alatise told the government what he knew about the conspiracy, he continued to dispute his own culpability from the time he made the initial proffer up to and including the sentencing hearing. Because these protests, by minimizing his culpability, implicated the scope of Alatise's involvement in the conspiracy and the degree to which he could reasonably foresee the actions of his co-conspirators, we cannot say that the district court clearly erred in denying him the additional one-point reduction for acceptance of responsibility. United States v. Francis, 39 F.3d 803, 809 (7th Cir.1994).
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Law enforcement officials in the United Kingdom have been unsuccessful in their attempts to locate and apprehend Culpepper