UNITED STATES of America,
Plaintiff–Appellee,

v.

Mario CLAIBORNE, Defendant–
Appellant.

No. 94–2794.

United States Court of Appeals,
Seventh Circuit.

Argued June 14, 1995.

Decided Aug. 1, 1995.

Colleen D. Coughlin, Joseph Wall (argued), Office of U.S. Atty., Crim. Div., Barry Rand Elden, Asst. U.S. Atty., Crim. Receiving, Ap-

pellate Div., Chicago, IL, for plaintiff-appellee.

Robert G. Clarke (argued), Chicago, IL, for defendant-appellant.

Before COFFEY, MANION and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

The defendant in this case was the leader of a drug conspiracy. Other members of the conspiracy were tried separately, and this court has already rendered a decision on their appeal. *United States v. Willis*, 49 F.3d 1271 (7th Cir.1995). Claiborne was convicted in the district court of a number of offenses related to that conspiracy. He was sentenced to five concurrent life terms and 15 statutory maximum terms, also concurrent. He appeals the district court's denial of a competency hearing in response to the government's motion to revoke his plea agreement. Claiborne also appeals his sentence.

## BACKGROUND

From 1987 through 1991, Mario Claiborne was the leader of a drug distribution business operating out of Chicago, Illinois and Gary, Indiana. In June, 1991, Claiborne was indicted on drug related charges stemming from this conspiracy. In September, 1991, Claiborne testified to a grand jury about the activities of his coconspirators. The testimony was delivered pursuant to a plea agreement Claiborne reached with the United States Attorney's Office. In October, 1991, Claiborne signed a plea agreement in which he agreed to plead guilty to three counts of the superseding indictment and testify truthfully at trial. In exchange for those promises, the prosecution promised that, at the time of his sentencing, it would inform the district court of Claiborne's substantial assistance and recommend a downward departure to reduce his sentence under the United States Sentencing Guidelines.

In April 1992, Claiborne was called by the prosecution to testify against his nine coconspirators in a trial over which District Judge Lozano presided. During direct examination, Claiborne stated that he was testifying under threat from the government. Trial stopped, and Judge Lozano conducted a hearing to investigate Claiborne's allegations. Claiborne stated at the hearing that he was threatened a total of six times by a DEA special agent, an IRS special agent, the Assistant United States Attorney ("AUSA") leading the prosecution of the case, and members of the El Rukn street gang. Claiborne, under a grant of immunity, disavowed his grand jury testimony, stating that it was prepared by the AUSA.

Trial resumed and under oath, Claiborne admitted signing the plea agreement but denied ever reading it or discussing it with his attorney. He stated that he lied to the district court when he pleaded guilty to the counts identified in the plea agreement. Claiborne, treated now as a witness hostile to the government, failed to answer the prosecution's questions, stating that he could not remember. Claiborne submitted to cross-examination, but after questioning by counsel for only two defendants, refused to answer further questions. Ultimately, the trial court struck Claiborne's testimony and instructed the jury to disregard it entirely.

The government brought a motion to revoke Claiborne's plea agreement. The motion was heard by District Judge Aspen. Claiborne challenged the motion on several grounds. Claiborne argued that his memory failed him due to his excessive drug use and therefore he could not testify effectively. He argued that this drug-induced lack of capacity made it impossible for him to have breached the plea agreement. Claiborne's request for a competency hearing on this issue was denied.

After the plea was revoked, Claiborne was tried and convicted by a jury of 20 drug-related counts. District Judge Eisele presided over the trial and sentencing. Judge Eisele sentenced Claiborne to five concurrent life terms, in addition to statutory maximum terms for the other counts, also to run concurrently with the life terms. The statutory fine was waived because of Claiborne's inability to pay.

On appeal, Claiborne argues that Judge Eisele improperly attributed forty-five kilo-

grams of "crack" cocaine to him. He also argues that the court failed to make specific findings in the face of his objections to the presentence report. Claiborne further argues that his sentence was improperly enhanced for possession of a firearm. Claiborne also argues that Judge Aspen improperly denied his request for a competency hearing.

## ANALYSIS

### A. The Plea Agreement

■■ The only argument raised on appeal concerning revocation of the plea agreement is Judge Aspen's denial of Claiborne's request for a competency hearing. We review the district court's decision denying a competency hearing to determine if that decision was an abuse of the court's discretion. *Chichakly v. United States*, 926 F.2d 624, 632 (7th Cir.1991). The district court need not conduct a competency hearing unless the facts create a reasonable doubt as to the defendant's competency. *Id.* We review the district court's factual findings for clear error. *United States v. Goines*, 988 F.2d 750, 782 (7th Cir.1993).

During the coconspirators' trial before Judge Lozano, Claiborne was cross-examined by defense counsel. The cross-examination lead to a colloquy that probed the effects of drugs on Claiborne's memory. The testimony elicited during that line of questioning did not cause the trial court to bar Claiborne's testimony due to his incompetency. In addition, the trial court denied Claiborne's motion for a court-ordered psychiatric examination, obviously not finding reasonable doubt of Claiborne's competency. This drug-induced memory failure is the argument Claiborne makes now concerning his competency.

Claiborne claims that his competency argument presented a factual question that required Judge Aspen to conduct an evidentiary hearing. We disagree. When Judge Aspen decided the motion to revoke, he relied on Judge Lozano's decision not to order a psychiatric examination for Claiborne.

Judge Lozano made that decision after observing Claiborne testify and witnessing the colloquy with defense counsel regarding his memory. The colloquy, which occurred at the time when Claiborne claims incompetency, fleshed out the degree to which Claiborne believed his memory was impaired. An evidentiary hearing before Judge Aspen would not be as timely as the competency colloquy that occurred before Judge Lozano. The colloquy was part of the factual record that Judge Aspen considered, and he quoted it at length when denying the hearing. In addition, Judge Aspen had contact with Claiborne through pretrial proceedings that allowed first-hand observation of Claiborne. This observation of Claiborne's "tenor and mien" matched with the factual record shows that Judge Aspen did not commit clear error when determining that no reasonable doubt existed about Claiborne's competency. The decision denying the competency hearing was not an abuse of discretion. *Chichakly*, 926 F.2d at 632.

### B. The Sentence

Claiborne attacks his sentence on three fronts. First, he argues that the amount of drugs attributed to him was based on unreliable evidence and was not proven by a preponderance of the evidence. Second, Claiborne argues that the trial court failed to make specific findings in the face of his objections to the presentence report. Finally, he argues that the enhancement for possession of a firearm was incorrect.[1]

■ The government stated that Claiborne was responsible for at least 108 kilograms of crack (cocaine base) and 391 kilograms of cocaine. Judge Eisele "generally agree[d]" with the government's attribution, but relied on his own "copious" notes kept during trial to reach a quantity determination. (Tr. 156, 21). At sentencing, Judge Eisele read the notes into the record, entertained lengthy argument, and heard testimony in preparation for Claiborne's sentencing. The issue capturing the most attention at sentencing and on appeal is the credibility of

---

1. The official transcript of the sentencing hearing has been made a part of the record on appeal. We note with dismay that passages of the transcript that support the government's argument have been underscored prominently. We do not condone this improper practice.

Leland Leghette, a coconspirator who testified for the government. Claiborne argues that Leghette's testimony cannot be credited because Leghette was impeached and because part of his testimony was uncorroborated.

A defendant in a drug conspiracy may be attributed with the quantity of drugs involved in furtherance of the conspiracy if such quantity was known or reasonably foreseeable to the defendant. *United States v. Cooper*, 942 F.2d 1200, 1206 (7th Cir.1991), *cert. denied*, 503 U.S. 923, 112 S.Ct. 1303, 117 L.Ed.2d 524 (1992). The government must prove the quantity of drugs involved in the conspiracy by a preponderance of the evidence. *United States v. Fowler*, 990 F.2d 1005, 1007 (7th Cir.1993). Quantity is a factual question that we will reverse only if the trial court's finding is clearly erroneous. *United States v. Price*, 988 F.2d 712, 720 (7th Cir.1993). The court noted, and the government reminds us, that Claiborne's sentence (including enhancements) would remain the same whether attributed with the quantity of crack the trial court found (45 kilograms) or with an amount under 1.5 kilograms. U.S.S.G. § 2D1.1(a)(3).

The trial court gave significant weight to Leghette's testimony. (Tr. 21–25, 156). It also relied on the testimony of Eula Scott, a coconspirator and Claiborne's long-term live-in girlfriend who was the mother of three of his children. (Tr. 156). Aspects of Leghette's testimony were corroborated by Scott and by several other witnesses, also coconspirators (See Tr. 107–146; 201–218; 245–289), or federal agents. (passim). The court also credited the testimony of coconspirators Helse and Jozwiak, who testified at the sentencing hearing. (Tr. 156).

The trial court also reviewed the statements Claiborne made in his proffer (created in conjunction with his later-revoked plea agreement). Although it did not use them to calculate quantity, it reviewed them with an eye to corroborating Leghette's testimony. Because Claiborne waived any rights to shield that information if the plea agreement was breached, it was properly admitted into the sentencing record. (Tr. 160). *See United States v. Dortch*, 5 F.3d 1056, 1068

(7th Cir.1993) (defendant's waiver of rights allowed use of proffer to impeach codefendant); *see also United States v. Maldonado*, 38 F.3d 936, 942 (7th Cir.1994) (proffer used for impeachment); *United States v. Goodapple*, 958 F.2d 1402, 1408–09 (7th Cir.1992) (same).

We have reviewed the trial and sentencing transcripts and considered the findings of the district court. The testimony establishes tremendous quantities of cocaine distributed through Claiborne's network of drug-runners. Of that, the testimony of Leghette and David Williams (another coconspirator) indicates a large amount of the cocaine was in its base form—crack. The trial court's findings were not clearly erroneous and the quantity of drugs attributable to Claiborne was proven by a preponderance of the evidence.

We reject Claiborne's argument that the trial court failed to make specific findings supporting its decision in the face of Claiborne's objections to the presentence report. Claiborne acknowledges that the central objection was to the reliability of Leghette's testimony. The trial court kept track of the testimony and made specific, comprehensive, findings in open court explaining how it reached its quantity calculation and why it believed Leghette was credible.

Last, Claiborne contests the trial court's two-level sentencing enhancement pursuant to § 2D1.1(b) of the United States Sentencing Guidelines. We will affirm the trial court's decision to enhance Claiborne's sentence unless the factual finding supporting that enhancement is clearly erroneous. *United States v. Cantero*, 995 F.2d 1407, 1410 (7th Cir.1993). The trial court based its decision on the discovery of firearms during the execution of a warrant at one of Claiborne's homes that lead to his arrest. Claiborne shared the home with his other live-in girlfriend and mother of one of his children, Donna Hurn. The raid turned-up a submachine gun loaded with 43 rounds of ammunition and a loaded 9mm. handgun. The submachine gun was in a closet next to the room in which Claiborne was sleeping, and the handgun was in a woman's coat pocket. The raid also uncovered 13 baggies of cocaine and

more than $32,000 cash. Claiborne concedes in his brief that he knew about the gun, but argues that he did not "possess" it for sentencing enhancement purposes.

■ Section 2D1.1(b) requires a two-level sentencing enhancement if the defendant possessed a dangerous weapon when committing the offense. The commentary to § 2D1.1(b) counsels that the enhancement should apply if the weapon was present at the crime scene, unless it is "clearly improbable" that the weapon was used in the offense. Application of § 2D1.1(b) does not rely on the defendant's actual possession of the firearm—for instance, the defendant does not have to use the weapon in order to be assessed the two-level enhancement. *United States v. Durrive*, 902 F.2d 1221, 1230 (7th Cir.1990).

The apartment where Claiborne was arrested and the weapons were found was used regularly in Claiborne's drug business, evidenced by the drugs and money there at the time of the raid as well as the trial testimony. The guns, tools of the drug trade, were loaded and close at hand for Claiborne's use. *Cantero*, 995 F.2d at 1410; *United States v. Valencia*, 913 F.2d 378, 384–85 (7th Cir. 1990). The district court's finding that Claiborne possessed a firearm for purposes of the sentencing enhancement is not clearly erroneous.

## CONCLUSION

Claiborne's conviction and sentence are AFFIRMED.