UNITED STATES of America,
Plaintiff–Appellee,

v.

Jesus S. COVARRUBIAS and Graciela Covarrubias, Defendants–Appellants.

Nos. 95–1362, 95–1363.

United States Court of Appeals,
Seventh Circuit.

Argued June 7, 1995.

Decided Sept. 12, 1995.

James Porter, Asst. U.S. Atty., Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for U.S.

John Dale Stobbs, II, East Alton, IL, for Jesus S. Covarrubias.

Phillip J. Kavanaugh, Andrea Smith, Office of the Federal Public Defender, East St. Louis, IL, for Graciela Covarrubias.

Before BAUER, COFFEY, and MANION, Circuit Judges.

BAUER, Circuit Judge.

Jesus S. Covarrubias pleaded guilty to possessing marijuana with intent to distribute and possessing a firearm during and in relation to a drug trafficking offense. Graciela Covarrubias, Jesus' wife, was convicted by a jury of possession of marijuana with intent to distribute. The district court sentenced Jesus to seventy-five months imprisonment and Graciela to thirty-three months imprisonment. Jesus challenges his sentence, and Graciela challenges her conviction and her sentence. We affirm.

## I.

On July 15, 1994, at approximately 2:15 p.m., Officer Richard W. Pyles of the Collinsville, Illinois, Police Department was on duty patrolling Interstate 55/70 in a marked police car. Officer Pyles noticed an eastbound black 1987 Mercury Sable following too closely behind a flat-bed semi truck and weaving back and forth in the lane. Officer Pyles activated his emergency lights and pulled the car over to the shoulder. The driver of the car, Jesus, exited the car and met Officer Pyles between the two vehicles. Jesus identified himself as Jorge Sanchez. Jesus at first stated that he did not have a driver's license but later said that he had a driver's license from Florida and had lost his wallet several weeks ago. Officer Pyles then radioed his backup officer, Sergeant Ed Delmore.

Officer Pyles went to the front of the car and spoke with the front-seat passenger, Graciela, after Sergeant Delmore arrived. Graciela identified herself as Graciela Sanchez. Graciela said that she owned the vehicle but did not have a driver's license. Officer Pyles asked Graciela to check the glove compartment for any papers showing ownership of the vehicle. Graciela opened the glove compartment, pulled out some papers, and closed the glove compartment very quickly. Graciela told Officer Pyles that Jesus was just a friend, they lived in Texas and were on their way to Ohio to pick tomatoes, and the three minor girls in the back seat of the car were her daughters and were unrelated to Jesus. Officer Pyles called his dispatcher to run a record check on the names Jorge and Graciela Sanchez. Jorge Sanchez had no recorded driver's license, and Graciela Sanchez had a driver's license from Texas which was suspended. A license plate check revealed that the car had a junk salvage title issued in January 1994.

Because neither Jesus nor Graciela had a valid driver's license, Officer Pyles, pursuant to his department's policy, decided to tow the car and took Jesus into custody. Officer Pyles ordered Graciela and the three girls to exit the car and began an inventory search of the vehicle. As Officer Pyles approached the car, he noticed the fresh scent of air freshener, which he had not smelled before. Officer Pyles saw a can of air freshener lying on the floor-board in the back seat and two screwdrivers on the front seat floor-board. The trunk of the car had new carpeting which

was glued to the floor, the sides, and beneath the back window. Officer Pyles could not see the back seat or any stereo speakers through the trunk when the trunk was open. A square piece of wood behind the back wall of the trunk moved as Officer Pyles pushed it. The back wall also had a slit in the carpeting through which Officer Pyles could see several packages wrapped in cellophane and duct tape, which Officer Pyles believed to be contraband. Officer Pyles then arrested Graciela.

The car was towed to a local gas station and further searched by Officer Pyles and Sergeant Delmore. The officers found a hidden compartment between the back seat and the trunk in which the packages were located. The packages were tested and determined to contain approximately seventeen kilograms, or thirty-seven pounds, of marijuana. The officers also found a Smith & Wesson .45 caliber semiautomatic pistol and a box of .45 caliber ammunition on top of the air conditioning ducts behind the glove compartment. The pistol was loaded with eight rounds of jacketed hollow-point bullets. At the police station the officers found a piece of paper and an address book in Graciela's purse which contained several names and phone numbers with Ohio area codes. Graciela claimed to have no knowledge of the paper or address book.

Jesus was questioned at the police station by an agent of the Bureau of Alcohol, Tobacco and Firearms ("ATF") who was fluent in Spanish. Jesus was read his *Miranda* rights in Spanish and signed an ATF form waiving those rights. Jesus then gave the agent an oral statement in Spanish, which was audiotaped, in which he stated that he was delivering marijuana to certain individuals in Ohio near Interstate 70. Jesus further stated that he had been given the marijuana and pistol by a man whose name he did not know, he would be paid $1,000 for his efforts, and he had constructed the hidden compartment in the car himself. Graciela was questioned separately by the ATF agent and Sergeant Delmore at the police station. Graciela was read her *Miranda* rights in English and in Spanish and signed an ATF waiver form. Graciela stated that Jesus was a friend and

that she and Jesus were travelling to an amusement park in Texas but decided en route to drive to Ohio to earn money by picking fruit. Graciela said that she was on probation for theft. Graciela also stated that she had permission from her probation officer to leave Texas but later admitted that she did not have such permission.

A grand jury returned a three-count indictment against Jesus and Graciela on July 21, 1994. Count One charged Jesus and Graciela with possession of marijuana with intent to distribute. 21 U.S.C. § 841(a)(1). Count Two charged Jesus and Graciela with possession of a firearm during and in relation to a drug trafficking crime. 18 U.S.C. § 924(c)(1). Count Three charged Graciela with possession of a firearm by a convicted felon. 18 U.S.C. § 922(g)(1). Jesus and Graciela pleaded not guilty.

Jesus and Graciela filed a joint pretrial motion to suppress the evidence seized from the car, Jesus' recorded statement, and Graciela's statements at the police station. The defendants asserted that the officers did not have probable cause to arrest either of them, the warrantless search of the car at the gas station violated the Fourth Amendment, and the statements were given in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The district court held a hearing on the motion on November 7, 1994, the morning of trial. The district court denied the motion following the hearing. Jesus then pleaded guilty to Counts One and Two.

The district court granted Jesus a two-level reduction in his offense level for acceptance of responsibility under Guideline § 3E1.1(a). The district court, however, refused to give Jesus an additional one-level reduction for acceptance of responsibility under Guideline § 3E1.1(b)(2) because Jesus' guilty plea was untimely. The district court sentenced Jesus to fifteen months imprisonment on Count One and a consecutive term of sixty months imprisonment on Count Two followed by two years of supervised release.

Graciela testified in her own defense at trial and denied any knowledge of the marijuana and pistol in the car. Jesus also testified in Graciela's defense at trial. Jesus

testified that he placed the marijuana, pistol, and ammunition in the car without Graciela being present and never told Graciela about these items or his $1,000 fee for delivering the marijuana. The jury found Graciela guilty on Count One of the indictment and not guilty on Counts Two and Three.

The district court imposed a two-level enhancement in Graciela's offense level for possession of a firearm pursuant to Guideline § 2D1.1(b)(1). The district court refused Graciela's request for a two-level reduction in her offense level for being a "minor participant" pursuant to Guideline § 3B1.2(b). The district court determined that Graciela had a criminal history category of III based in part on two 1985 convictions in Ohio state court for domestic violence and disorderly conduct for which Graciela received a ten-day suspended sentence and was fined $75. The district court sentenced Graciela to thirty-three months imprisonment followed by three years of supervised release.

## II.

Jesus challenges his sentence, and Graciela raises several challenges to her conviction and her sentence. We will address their arguments in turn.

## A.

■ Jesus' sole argument on appeal is that the district court erroneously denied an additional one-level reduction in his offense level for acceptance of responsibility under Guideline § 3E1.1(b)(2). The district court's acceptance of responsibility determination is a factual determination which we review for clear error. *United States v. Francis*, 39 F.3d 803, 807 (7th Cir.1994). Jesus bears the burden of proving his entitlement to the reduction by a preponderance of the evidence. *Id.*

Guideline § 3E1.1(a) provides for a two-level reduction in a defendant's offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." Section 3E1.1(b)(2) provides for an additional one-level reduction if the defendant qualifies for the reduction under Guideline § 3E1.1(a), the defendant's offense level is sixteen or greater, and the defendant has "timely notif[ied] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently."

■ The district court's conclusion that Jesus' guilty plea was untimely under Guideline § 3E1.1(b)(2) is not clearly erroneous. A defendant who "stands poised on the brink of trial" is not entitled to a reduction under the Guideline. *Francis*, 39 F.3d at 808–09 (citation and internal quotation marks omitted). Jesus pleaded guilty on the day of trial. His guilty plea did not permit the government to avoid preparing for his trial, nor did it permit the district court to allocate its resources efficiently. *See id.* at 807–09 (guilty pleas approximately one week before trial did not entitle the defendants to the additional reduction under Guideline § 3E1.1(b)(2)); *United States v. Robinson*, 14 F.3d 1200, 1203 (7th Cir.1994) (guilty plea four days before trial was not "timely notice" under the Guideline). The fact that a trial was held for Graciela after Jesus pleaded guilty is irrelevant because the government was forced to specifically prepare for Jesus. *See Francis*, 39 F.3d at 808.

Jesus nonetheless insists that he is entitled to the additional reduction under the Guideline because the hearing on the suppression motion was held on November 7, 1994, the morning of trial, and Jesus pleaded guilty as soon as the motion was denied. Jesus' counsel asserts that he would have rendered ineffective assistance if he had permitted Jesus to plead guilty without filing a pretrial suppression motion in order for Jesus to receive the additional one-level reduction. We are not persuaded.

The hearing on the motion to suppress was first scheduled for October 21 by the district court but was continued to November 7 after Jesus filed a motion to continue. Jesus did not object to the new date on the ground that it would prevent him from receiving the additional acceptance of responsibility reduction. Jesus also did not inform the government that he would be pleading guilty in the event that the suppression motion was denied. Had he done so, the government could have

avoided preparing for his trial because the motion to suppress, if granted, would have destroyed the government's case. *See United States v. Narramore*, 36 F.3d 845, 846 (9th Cir.1994) (pretrial motion to dismiss would have "completely obviated" trial and a conditional offer to plead guilty therefore would have prevented trial preparation); *cf. United States v. Morillo*, 8 F.3d 864, 872 (1st Cir. 1993) (even a conditional offer to plead guilty does not entitle a defendant to an additional reduction under Guideline § 3E1.1(b)(2)). Because Jesus made no attempt to conserve government and district court resources in his case prior to November 7, the district court did not clearly err in denying him the additional reduction.

## B.

■■■ Graciela first asserts that the district court erroneously denied her suppression motion. Graciela contends that Officer Pyles did not have probable cause to arrest her and that the evidence seized from the car and her statements at the police station should not have been admitted at trial as fruit of that unconstitutional arrest. We review the district court's denial of a motion to suppress evidence for clear error. *United States v. Willis*, 61 F.3d 526 (7th Cir.1995); *United States v. Gilbert*, 45 F.3d 1163, 1165 (7th Cir.1995).

■■■ A police officer must have probable cause to believe that a person has committed a crime in order to make a warrantless arrest. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964); *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959). Police officers have probable cause to arrest if "at the moment the arrest was made ... the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the suspect had committed an offense. *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (*per curiam*) (quoting *Beck*, 379 U.S. at 91, 85 S.Ct. at 225–26); *see Edwards v. Cabrera*, 58 F.3d 290, 292 (7th Cir.1995); *Gilbert*, 45 F.3d at 1166. "While probable cause requires more than the mere suspicion, we do not require it to reach the level of virtual certainty." *Gilbert*, 45 F.3d at 1166.

Officer Pyles arrested Jesus for driving without a driver's license, 625 ILCS 5/6–112, and decided to tow the car pursuant to his department's policy. Officer Pyles' inventory search of the vehicle (which Graciela does not challenge on appeal) revealed what appeared to be a hidden compartment in the trunk which contained several packages wrapped in cellophane and duct tape. Officer Pyles reasonably believed that these packages were contraband and therefore arrested Graciela.

Graciela asserts that she was no more subject to arrest than were her three daughters in the back seat of the car, who were not arrested. This argument simply ignores the facts and circumstances within Officer Pyles' knowledge at the time of the arrest. Graciela was the only other adult in the car and told Officer Pyles that she owned the vehicle. Graciela said that she had ridden in the vehicle with Jesus from Texas and they were travelling to Ohio. Officer Pyles smelled air freshener in the car for the first time after he arrested Jesus. Graciela was in the car while Jesus was being arrested and could have easily sprayed the car with air freshener. The district court's conclusion that Officer Pyles had probable cause to arrest Graciela for possession of the marijuana is not clearly erroneous.

## C.

■■■ Graciela next challenges the sufficiency of the evidence supporting her conviction for possession of marijuana with intent to distribute. Our task in evaluating this claim is clear: we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

Graciela challenges the applicability of this standard to determining whether the evidence was sufficient to support her conviction. Although this standard is firmly entrenched in this and other circuits, Graciela

nonetheless urges us to adopt a standard applied by the Second Circuit: whether "the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *United States v. Jones*, 30 F.3d 276, 281 (2d Cir.1994) (quoting *Jackson*, 443 U.S. at 318, 99 S.Ct. at 2788); *cert denied*, — U.S. —, 115 S.Ct. 602, 130 L.Ed.2d 513 (1994). Chief Judge Newman of the Second Circuit has stated in a law review article that this standard is distinct from the "any rational trier of fact" standard, and the "record evidence" standard is the "more traditional and more rigorous standard." Jon O. Newman, *Beyond "Reasonable Doubt"*, 68 N.Y.U.L.Rev. 979, 987–88 (1993).

In our view, the standards are equivalent. The Supreme Court in *Jackson* did not indicate that it was creating two different standards for reviewing sufficiency of the evidence claims. *See Jackson*, 443 U.S. at 318–19, 99 S.Ct. at 2788–89. The Court further described the "*any* rational trier of fact" standard as the "relevant" standard. *Id.* at 319, 99 S.Ct. at 2789. Juries in federal criminal trials are instructed that the defendant is presumed innocent. This presumption remains with the defendant throughout the trial and during jury deliberations, and is not overcome unless *from all the evidence in the case* the jury is convinced beyond a reasonable doubt that the defendant is guilty. *Federal Criminal Jury Instructions of the Seventh Circuit* § 2.06 (1980) (emphasis added). A jury which disregards this instruction in convicting a defendant is irrational, and the conviction will be reversed on appeal under either standard. The "record evidence" standard is merely a restatement of the "any rational trier of fact" standard.

▮ To convict Graciela of possession of marijuana under 21 U.S.C. § 841(a)(1), the government was required to prove that (1) Graciela knowingly or intentionally possessed marijuana; (2) Graciela possessed marijuana with the intent to distribute it; and (3) Graciela knew that the material was a controlled substance. *United States v. Kitchen*, 57 F.3d 516, 521 (7th Cir.1995). Possession may be actual or constructive. *Id.* "Constructive possession exists when a person does not have actual possession but instead knowingly

has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Id.* at 520 (quoting *United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir.1990), *cert. denied*, 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990)).

Graciela asserts that her conviction must be reversed because the government failed to prove that she knew the car contained marijuana. We do not agree. Although Graciela testified at trial that she had no knowledge of the marijuana, the jury was free to disbelieve this testimony in light of the evidence presented by the government. Graciela owned the car and was married to its driver. Officer Pyles testified that Graciela was very nervous after the car was stopped. Graciela lied to Officer Pyles by giving him a false name and by telling him that Jesus was just a friend and that her daughters were unrelated to Jesus. Graciela also lied at the police station by stating that Jesus was a friend and that she had permission from her probation officer to leave Texas. A can of air freshener was lying on the back seat floorboard and two screwdrivers were lying on the front seat floor-board. The car was sprayed with air freshener while Officer Pyles was arresting Jesus and while Graciela was in the vehicle.

Graciela had ridden in the car with Jesus from southern Texas for over twenty-four hours, and they had stopped only for gas. Their trip was ill-defined and changed en route from visiting an amusement park in Texas to travelling to Ohio to pick fruit. Graciela testified at trial that Jesus had forced her to continue to Ohio by threatening to take her daughters without her. Graciela also testified that Jesus had physically beat her in the past and had taken her jewelry without her permission the day before they left in order to pay for the trip. Graciela had not told the police this after the car was stopped or at the police station. Finally, the police officers found a piece of paper in Graciela's purse on which several names and phone numbers with Ohio area codes were written. The officers also found an address book in Graciela's purse which contained names and phone numbers in Ohio. The

jury could have inferred that these names were Graciela's contacts for distributing the marijuana in Ohio.

The government's evidence was more than sufficient to establish Graciela's knowledge of the marijuana in the car. The evidence was also sufficient to establish Graciela's control over the marijuana because she owned the car, she was married to its driver, and she had ridden in the car for over twenty-four hours with only brief stops. Graciela's sufficiency claim therefore fails.

### D.

■■■■■ Graciela asserts that the district court erred by giving an "ostrich" or "conscious avoidance" instruction over her objection. This instruction stated as follows:

> You may infer knowledge from a combination of suspicion and indifference to the truth. If you find that a person had a strong suspicion that things were not what they seemed or that someone had withheld some important facts, yet shut her eyes for fear of what she would learn, you may conclude that she acted knowingly, as I have used that word.

We review the district court's decision to give an ostrich instruction for an abuse of discretion. *United States v. Caliendo*, 910 F.2d 429, 434 (7th Cir.1990). In reviewing that decision, we must review the evidence, and all reasonable inferences that may be drawn from that evidence, in the light most favorable to the government. *Willis*, 61 F.3d 526, 533.

■■■■■ We have recently observed that the "proper use of this instruction is well approved in this circuit." *Id.; see also United States v. Hoyos*, 3 F.3d 232, 237 (7th Cir. 1993); *United States v. Stone*, 987 F.2d 469, 471 (7th Cir.1993); *United States v. Gonzalez*, 933 F.2d 417, 433–34 (7th Cir.1991) (collecting cases). The ostrich instruction is appropriate when "the defendant claims a lack of guilty knowledge and there are facts and evidence that support an inference of deliberate ignorance." *Willis*, 61 F.3d at 533–34. (citation and internal quotation marks omitted). This "deliberate ignorance" may be "the result of a 'mental, as well as a physical

effort—a cutting off of one's normal curiosity by an effort of will.'" *Hoyos*, 3 F.3d at 237 (quoting *United States v. Giovannetti*, 919 F.2d 1223, 1229 (7th Cir.1990)).

Graciela claimed at trial (and continues to claim on appeal) that she did not have any knowledge of the presence of marijuana in the car. We have explained that the jury could have easily disbelieved this testimony in light of the evidence of her knowledge discussed above. Even if the jury believed her testimony, the evidence, viewed in the light most favorable to the government, was more than sufficient for the jury to conclude that Graciela's ignorance was deliberate and the result of "cutting off of [her] normal curiosity by an effort of will." *See Gonzalez*, 933 F.2d at 435, 446 n. 19. Graciela testified that Jesus told her that they would be travelling to an amusement park in Texas but he decided en route to drive to Ohio to pick fruit. Jesus drove for over twenty-four hours from southern Texas to Illinois, stopping only for gas. A can of air freshener and two screwdrivers were clearly visible inside the car. The hidden compartment occupied a sizable space between the back seat and the trunk. The jury was entitled to consider whether a reasonable person in these circumstances "would have 'strongly suspect[ed] that [she] was involved in shady dealings.'" *United States v. Jackson*, 33 F.3d 866, 875 (7th Cir.1994) (quoting *Giovannetti*, 919 F.2d at 1228), *cert. denied*, —— U.S. ——, 115 S.Ct. 1316, 131 L.Ed.2d 197 (1995). The district court did not abuse its discretion in giving the ostrich instruction.

### E.

■■■■■ Graciela asserts that the district court erred by imposing a two-level enhancement in her offense level for possession of a firearm pursuant to Guideline § 2D1.1(b)(1). We review the district court's factual finding supporting the enhancement for clear error. *United States v. Claiborne*, 62 F.3d 897, 900 (7th Cir.1995); *United States v. Curley*, 55 F.3d 254, 258 (7th Cir.1995).

Guideline § 2D1.1(b)(1) provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." Application Note Three to the Guideline states

that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Guideline § 2D1.1(b)(1) does not require actual possession of the firearm by the defendant. *Claiborne,* 62 F.3d at 901–02. Constructive possession of the weapon is sufficient to trigger the enhancement. *United States v. Anderson,* 61 F.3d 1290, 1304–05 (7th Cir.1995).

 At the outset, we point out that Graciela's acquittal on Counts Two and Three of the indictment, which charged her with possession of a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1), and possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1), respectively, does not bar her enhancement for possession of a firearm pursuant to Guideline § 2D1.1(b)(1). *United States v. Jones,* 54 F.3d 1285, 1294 (7th Cir.1995); *United States v. Billops,* 43 F.3d 281, 288 (7th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1389, 131 L.Ed.2d 241 (1995); *United States v. Chandler,* 12 F.3d 1427, 1434 (7th Cir.1994) (collecting cases). "Nothing in either the Guidelines or the Constitution prevents a judge from taking account of conduct in which the defendant engaged, whether or not an acquittal prevents the imposition of criminal penalties directly on that conduct." *Jones,* 54 F.3d at 1294 (citation and internal quotation marks omitted).

The record supports the district court's conclusion that Graciela had knowledge of and control over the pistol in the car. The pistol was located behind the glove compartment on the front passenger side of the car. Graciela had ridden in the front passenger side of the car for over twenty-four hours. Graciela owned the car and was married to its driver. Officer Pyles testified that Graciela repeatedly glanced at the glove compartment while she was speaking to him. Graciela closed the glove compartment very quickly after retrieving some papers in order to prevent Officer Pyles from seeing inside. Sergeant Delmore testified that Graciela asked three times if she could retrieve more papers from the glove compartment after being ordered out of the vehicle, which he refused. The district court's finding that

Graciela constructively possessed the firearm is not clearly erroneous.

F.

 Graciela contends that the district court erred by denying her request for a two-level reduction in her offense level for being a "minor participant" pursuant to Guideline § 3B1.2(b). The district court's determination of Graciela's role in the offense is a factual finding which we review for clear error. *United States v. Herrera,* 54 F.3d 348, 356 (7th Cir.1995); *United States v. Redig,* 27 F.3d 277, 281 (7th Cir.1994). Graciela bears the burden of showing her entitlement to the reduction by a preponderance of the evidence. *United States v. Soto,* 48 F.3d 1415, 1423 (7th Cir.1995).

Guideline § 3B1.2(b) provides for a two-level reduction in a defendant's offense level "[i]f the defendant was a minor participant in any criminal activity." Application Note Three to the Guideline states, "[f]or purposes of § 3B1.2(b), a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." We have held that "a defendant must be substantially less culpable than the average participant" to qualify as a minor participant under Guideline § 3B1.2(b). *United States v. Kerr,* 13 F.3d 203, 206 (7th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1629, 128 L.Ed.2d 353 (1994). This is a fact-intensive analysis which has no formulaic solution. *Id.*

Graciela was no less culpable than Jesus in possessing the marijuana with intent to distribute. Graciela owned the car and rode with Jesus for over twenty-four hours from southern Texas. As the district court observed, "it is imperative for the success of the venture that the couriers present a good image to the ... [arresting] officer." Sentencing Hr'g Tr. at 13. Graciela's presence in the car enhanced Jesus' image as a law-abiding citizen and reduced the suspicious nature of the trip. The names and phone numbers in Ohio found in Graciela's purse indicate that Graciela intended to play an active role in distributing the marijuana. The district court's conclusion that Graciela

was not a minor participant under Guideline § 3B1.2(b) is not clearly erroneous.

### G.

 Graciela's final challenge to her sentence is that the district court over-represented her criminal history by adding one criminal history point for her 1985 convictions for domestic violence and disorderly conduct in Ohio state court. Graciela objected to this criminal history point in the district court on the ground that these convictions merely involved an incident of domestic violence in which she was the victim and was in a highly emotional state. As a collateral attack on her Ohio state convictions, Graciela's claim was without merit. We have recently held that "notwithstanding any right to a collateral attack of a prior sentence guaranteed by Federal statute or the United States Sentencing Guidelines, a prior conviction may be collaterally attacked at sentencing only where the defendant claims that he was deprived of counsel in violation of *Gideon [v. Wainwright]*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 [ (1963) ]." *United States v. Arango-Montoya*, 61 F.3d 1331, 1336–37 (7th Cir.1995) *(per curiam); see also Custis v. United States*, — U.S. —, — – —, 114 S.Ct. 1732, 1738–39, 128 L.Ed.2d 517 (1994); *United States v. Hoggard*, 61 F.3d 540, 542 (7th Cir.1995) *(per curiam); United States v. Killion*, 30 F.3d 844, 845–46 (7th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 954, 130 L.Ed.2d 896 (1995). Graciela did not claim that she was deprived of counsel and therefore could not challenge her Ohio state convictions.

 Graciela now claims that her objection was really a motion to depart downward from the Guidelines on the ground that her criminal history category seriously over-represented the seriousness of her record and the likelihood that she will commit other crimes. United States Sentencing Commission, *Guidelines Manual,* § 4A1.3 (Nov. 1994). Graciela contends her sentence must be vacated because the district court erroneously believed that it had no authority to depart downward under Guideline § 4A1.3. *See United States v. Poff*, 926 F.2d 588, 591, (7th Cir.1991) (en banc), *cert. denied,* 502

U.S. 827, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991). Graciela did not phrase her objection in the district court as a motion to depart downward, and this argument has therefore been waived. *United States v. Kellum*, 42 F.3d 1087, 1096 (7th Cir.1994).

 Even if Graciela had preserved the argument, it is without merit. The district court gave absolutely no indication that it was unaware of its authority to depart downward under Guideline § 4A1.3. Because the district court was not obligated to state its reasons for refusing to depart downward, we assume that the district court considered and rejected departing downward under Guideline § 4A1.3. *United States v. Abbott*, 30 F.3d 71, 73 (7th Cir.1994). And we have no jurisdiction to review a district court's discretionary refusal to depart downward from the Guidelines. *United States v. Wright*, 37 F.3d 358, 360–61 (7th Cir.1994).

For the foregoing reasons, the sentence of Jesus Covarrubias, and the conviction and sentence of Graciela Covarrubias, are

Affirmed.