UNITED STATES of America,
Plaintiff–Appellee,

v.

Yvonne STRIBLING, Defendant–Appellant.

No. 96–1194.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 6, 1996.

Decided Aug. 26, 1996.

**322**

James L. Porter, Thomas Leggans (argued), Office of U.S. Atty., Crim. Div., Fairview Heights, IL, for U.S.

Thomas J. Royce (argued), Chicago, IL, Mary Ellen Dienes, Northfield, IL, for Yvonne Stribling.

Before BAUER, MANION, and DIANE P. WOOD, Circuit Judges.

BAUER, Circuit Judge.

Yvonne Stribling, contesting the district court's denial of her motion to suppress as well as the sufficiency of the evidence, appeals from her conviction of possession with intent to distribute approximately thirty kilograms of cocaine. We affirm.

## BACKGROUND

Just before 9:00 a.m. January 11, 1995, on Interstate 55/70 in Madison County, Illinois, Trooper Rob Eisenbarger stopped two women in a Lincoln Continental for several traffic violations. Eisenbarger approached the vehicle and asked the driver, fifty-six-year-old accountant Yvonne Stribling, to show her driver's license and the vehicle's paperwork. Stribling was asked to sit in Eisenbarger's car; there she told him that the car belonged to her brother, Kenneth Hughes, that her passenger had picked her up in Las Vegas, and that they were going to Chicago to visit the passenger's brother.

The passenger produced identification in the name Tammy Bell (although she was later identified as Rachele Leah Flemings). She said that Stribling had picked her up in Las Vegas and the purpose of the trip was to visit Flemings's brother in Michigan. She said she had known Stribling for approximately one year. Eisenbarger returned to his car and asked Stribling how she had acquired the Lincoln. Becoming increasingly nervous, she answered that she had picked the car up in California. She also stated that she had known Flemings for approximately three years. At this point, Eisenbarger used his squad car communications to discover that both women had prior arrest records.

Stribling returned to her car. Eisenbarger returned her paperwork to her, gave her a written warning, and told her that she was free to go. As Stribling turned to leave, Eisenbarger asked if he could ask a few more questions, and Stribling consented. Ei-

senbarger stated that it was his responsibility to be aware of persons transporting guns and drugs on the interstate highway system and asked Stribling if she had any guns. She replied no. Then he asked if she had any drugs. Stribling became agitated, but turned away and said no, they had nothing like that.

Eisenbarger asked permission to search Stribling's car. She signed a written consent form, which included permission to examine "any part, compartment, or trunk of the vehicle and the contents of any object or container found therein." When Eisenbarger opened the trunk, he noticed a strong smell of adhesive and became suspicious that the car contained a hidden compartment for carrying contraband. Unlike other cars, the trunk carpeting was glued down. After pulling it back, he found an unusual compartment built into the trunk which was constructed from fiberglass and sealed with adhesive. In the compartment, there were thirty bundles wrapped in gray duct tape and placed into plastic bags. One of the bundles field-tested positive for cocaine. Stribling and Flemings were placed under arrest, read their *Miranda* warnings, and transported to police headquarters.

Before trial, Stribling moved to suppress the cocaine. She claimed that the stop was pretextual, that the subsequent search of the trunk was unlawful, and that the search was beyond the limited scope of her consent to search. The district court, after conducting an evidentiary hearing, denied the motion. The jury found Stribling guilty of violating 21 U.S.C. § 841(a)(1).

## ANALYSIS

### A. Motion to Suppress

■ Although legal determinations of reasonable suspicion or probable cause are reviewed de novo, *Ornelas v. United States,* —— U.S. ——, ——, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), this court reviews for clear error the district court's findings of historical fact when denying a motion to suppress evidence. *Id.; United States v. Covarrubias,* 65 F.3d 1362, 1368 (7th Cir.1995). Because the resolution of a motion to suppress is necessarily fact-specific, we give special deference to the district court that heard the testimony and observed the witnesses at the suppression hearing. *United States v. Navarro,* 90 F.3d 1245, 1251–52 (7th Cir. 1996).

Stribling contends that the original traffic stop was pretextual, that Eisenbarger had no probable cause to detain her after issuing her a written warning, and that she did not feel free to leave when he began asking her about guns and drugs and for permission to search the car. Thus, she asserts, her actions and statements took place in a custodial setting and her consent to search was involuntary and invalid. Further, she states that there was neither probable cause nor exigent circumstances to justify Eisenbarger's search of her trunk, that her consent to do so was involuntary as obtained under duress, and that Eisenbarger's search exceeded the scope of her consent.

■ *Whren v. United States,* —— U.S. ——, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), in which the Supreme Court held that ulterior motives do not invalidate a police stop for traffic or equipment violations, forecloses Stribling's argument that the traffic stop was a pretext for drug investigation. See *United States v. Murray,* 89 F.3d 459, 461 (7th Cir.1996). Whether Eisenbarger was detailed primarily to drug enforcement is irrelevant: the initial traffic stop was supported by probable cause and consequently was proper.

■ Stribling then consented, in writing, to allow Eisenbarger to search her car. She first argues that her consent was involuntary because she was effectively in custody and did not feel free to leave when Eisenbarger started asking her about guns and drugs. The parties agree that after Eisenbarger issued Stribling the warning he told her that she could depart, but asked her if she would answer a few more questions. "[T]he law is well established that if the officer asks rather than commands, the person accosted is not seized, and so the protections of the Fourth Amendment do not attach." *United States v. DeBerry,* 76 F.3d 884, 885 (7th Cir.1996). Stribling was asked to remain and she chose

to do so. See *United States v. Rivera*, 906 F.2d 319 (7th Cir.1990); .cf. *United States v. Finke*, 85 F.3d 1275 (7th Cir.1996) (defendant would not feel free to leave after officer informed him that he was calling a canine unit).

Stribling next argues that the circumstances surrounding her consent indicate submission to authority rather than voluntariness. "Consent lifts the warrant requirement of the fourth amendment but only if the consent to search is voluntary." *United States v. Quinones–Sandoval*, 943 F.2d 771, 774 (7th Cir.1991). "[T]he question whether a consent to search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973). Under the factors enunciated in *United States v. LaGrone*, 43 F.3d 332, 334 (7th Cir.1994) and *United States v. Kozinski*, 16 F.3d 795, 810 (7th Cir.1994), neither the district court's finding that Stribling's consent was voluntary, nor its finding that Stribling consented to a search of "any compartment" of the car, can be considered clearly erroneous. See *Quinones–Sandoval*, 943 F.2d at 774–75.

■ Because Stribling voluntarily consented to the search of the car, neither probable cause nor exigent circumstances was necessary for Eisenbarger to search the trunk legally. *Schneckloth*, 412 U.S. at 222, 93 S.Ct. at 2045. Further, as the district court noted, Stribling was present during the search; she could (and should) have protested at the time if she believed Eisenbarger exceeded the scope of her consent, as it was her burden to limit that scope. See *United States v. Price*, 54 F.3d 342, 346 (7th Cir. 1995); *United States v. Maldonado*, 38 F.3d 936, 941 (7th Cir.1994), cert. denied, —— U.S. ——, 116 S.Ct. 205, 133 L.Ed.2d 138 (1995).

### B. Sufficiency of the Evidence

■ In evaluating the sufficiency of the evidence, this court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Covarrubias*, 65 F.3d at 1368; see *United States v. Meadows*, 91 F.3d 851, 854 (7th Cir.1996).

■ To establish a violation of 21 U.S.C. § 841(a)(1), possession of a controlled substance with intent to distribute, the government must prove beyond a reasonable doubt that Stribling: (1) knowingly or intentionally possessed cocaine; (2) possessed it with the intent to distribute; and (3) knew it was a controlled substance. *Covarrubias*, 65 F.3d at 1369; *United States v. Windom*, 19 F.3d 1190, 1199 (7th Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994). The government may use circumstantial evidence to show possession, where the evidence sufficiently demonstrates ownership, dominion, or control of an object. *Covarrubias*, 65 F.3d at 1369; *United States v. Hernandez*, 13 F.3d 248, 252 (7th Cir.1994).

■ In this case, the evidence, when viewed most favorably to the government, shows that Stribling, when stopped as part of legitimate traffic enforcement, was excessively nervous and became increasingly agitated when asked about drugs. When asked about routine matters such as her origination point, her destination, and her relationship to the car's owner, her answers were contradictory both to her previous statements and to the statements of her passenger. Additionally, rather than flying as she had originally planned, Stribling had driven across country to attend a business meeting, generally without stopping except for food and gas.

Further, after Stribling was arrested, she was paged, with the caller leaving a Chicago number that belonged to the hotel at which she planned to stay. She told police that she did not know who could be calling her, but agreed to cooperate with police, return the call, and explain that she would be delayed in arriving in Chicago because of a slight accident. While returning the call, however, she deviated from her instructions and repeatedly stated that the same thing that happened to "Pat" had happened to her; the caller (one of Stribling's clients, a Clyde Williams) left

the hotel without checking out, went to O'Hare airport, and bought a one-way ticket to Los Angeles. Stribling acted surprised to find Williams on the phone, yet she testified that she was traveling to Chicago because she was scheduled to attend a meeting with Williams on January 11. Neither party mentioned this business meeting on the phone.

The jury was entitled to infer from Stribling's nervousness and lies to the police, as well as the contradictory nature of her testimony and actions, that she knew of the presence and the nature of the cocaine. Further, it was entitled to infer from the amount of cocaine tested, fifteen kilograms, and the total amount of the substance found in the car, thirty kilograms, that the cocaine was not for personal use. Nothing more is required to rebut Stribling's argument. See *Covarrubias*, 65 F.3d at 1362.

## C. Rule 30 Certification

In compliance with Circuit Rule 30(c), appellant's counsel certified that he had included in appellant's appendix all materials required by Circuit Rules 30(a) and 30(b). This was a false certification, as the appendix did not contain the transcript pages of the suppression hearing at which the district judge made findings of fact and explained his reasoning. Nor did the record, because the suppression hearing had never been fully transcribed. Neither party has offered an explanation for the incomplete record.

We cannot imagine counsel might believe that we could review a denial of a motion to suppress without having an inkling of the district court's findings of fact or conclusions of law. In several recent decisions we have discussed the importance of proper compliance with Circuit Rule 30(a). See, e.g., *Hill v. Porter Mem. Hosp.*, 90 F.3d 220 (7th Cir.1996); *Guentchev v. INS*, 77 F.3d 1036, 1038–39 (7th Cir.1996). Counsel is advised to be aware of and comply with the rule's requirements, as future noncompliance may result in monetary sanctions. *In re Galvan*, 92 F.3d 582 (7th Cir.1996).

AFFIRMED.