142 F.3d 440
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Antonio FONTANEZ, Defendant-Appellant.
 No. 97-1848.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 4, 1998.
Decided April 6, 1998.
 
 Appeal from the United States District Court for the Northern District of Indiana, Hammond Division, No. 95 CR 62, Rudy Lozano, Judge.
 Before Hon. WALTER J. CUMMINGS, Hon. JESSE E. ESCHBACH, Hon. DANIEL A. MANION, Circuit Judges.
 
 ORDER
 
 1
 Antonio Fontanez pleaded guilty to conspiracy to possess with intent to distribute cocaine and marijuana; possession with intent to distribute cocaine; and possession with intent to distribute marijuana in violation of 21 U.S.C §§ 841(a)(1) and 846. Fontanez conditioned his plea on the right to appeal the denial of his motion to suppress. On appeal, Fontanez asserts that he did not voluntarily consent to the search of his place of business.
 
 
 2
 Agent David Zamora of the East Chicago, Indiana, Police Department and the Drug Enforcement Administration (DEA) testified at Fontanez's suppression hearing that Fontanez was involved in a conspiracy to possess with intent to distribute cocaine and marijuana While Fontanez's place of business, P & R Auto Repair, was under surveillance by DEA agents, the agents observed two men approach Fontanez at the door of P & R Auto Repair and enter the garage. Approximately ten minutes later the two men and Fontanez exited the garage, at which time the two men drove away. The DEA agents followed the car, and at some point saw one man removing a white brick-shaped package from his coat and putting it in a "hidden" compartment in the rear of the car. The car then returned to P & R Auto where one man got out and the other drove away. The DEA agents later stopped the car and found a kilogram of cocaine in the compartment. The driver, who was identified as Asael Sanchez, indicated that his source for the cocaine was Fontanez.
 
 
 3
 Approximately two months later, an undercover DEA agent posing as a member of a motorcycle gang met with Fontanez at P & R Auto Repair to purchase drugs. The agent was wired and monitored by Agent Zamora. After Fontanez showed the undercover agent the cocaine, the agent said he had to get money. Shortly thereafter, other DEA agents entered the repair shop with their guns drawn. After entering the office area, Agent Zamora asked Fontanez to get on the ground while another agent kept a weapon drawn on Fontanez. Agent Zamora then handcuffed Fontanez with his hands behind his back. Agent Zamora testified that he placed Fontanez in a chair and read him his Miranda rights both in Spanish and English and told Fontanez that he had the right to refuse consent for the search. Agent Zamora asked Fontanez if he understood his rights, to which he replied yes. Other DEA agents performed a protective sweep of the premises in order to make sure there were no other individuals in the building.
 
 
 4
 Agent Zamora testified that he readjusted the handcuffs so that Fontanez's hands were in front. Fontanez was given a soft drink and was allowed to smoke a cigarette. After asking Fontanez if he was willing to answer some questions, Agent Zamora gave Fontanez a consent form which Agent Zamora read to him in both English and Spanish. The consent form stated:
 
 
 5
 1. I HAVE BEEN ASKED TO PERMIT SPECIAL AGENTS OF THE DRUG ENFORCEMENT ADMINISTRATION TO SEARCH: (Describe the person, places or things to be searched.)
 
 P.R. AUTO REPAIR
 3702 DRUMMOND
 
 6
 EAST CHICAGO, IN.
 
 
 7
 2. I HAVE NOT BEEN THREATENED, NOR FORCED IN ANY WAY.
 
 
 8
 3. I FREELY CONSENT TO THIS SEARCH.
 
 
 9
 Agent Zamora testified that Fontanez signed the consent form. Agent Zamora then asked Fontanez if there were any narcotics on the premises, to which Fontanez answered yes and pointed to the lower left-hand side of his desk The agents then escorted Fontanez to the hallway and brought in a drug-sniffing dog which alerted the agents that there were drugs in the lower left side of the desk. The agents removed a package of narcotics from the desk. They also found a pound of marijuana and a triple-beam scale.
 
 
 10
 Although the chronology of the events is unclear from Fontanez's testimony, his version of the search differs substantially from that of the agents. He testified that three agents entered the office area with their guns drawn telling him to lie on the ground. The agents talked to Fontanez in a violent way and were searching the premises while he was on the ground. The agents then escorted Fontanez out of the office while they brought in a dog to search the premises. Fontanez stated that at this time an agent was aiming a gun at him. Fontanez also testified that the agents never asked him if they could search the repair shop and that he was not advised of his constitutional rights when he was placed under arrest. He stated that he demanded an attorney Fontanez asserted that the agents showed him a piece of paper which he refused to sign. The agents then told Fontanez that they were going to ruin the entire place and were going to get a search warrant. He testified that he signed the paper so the agents would not tear down the place Fontanez testified that the agents threatened him with life imprisonment if he did not cooperate. He also stated that he was under the influence of drugs
 
 
 11
 On appeal, Fontanez asserts that the district court committed clear error in finding that he voluntarily consented to the search of P & R Auto Repair. In determining whether the consent to search was made voluntarily, or instead was the product of coercion, we look to the totality of the circumstances Valance v. Wisel, 110 F.3d 1269, 1278 (7th Cir.1997) The circumstances the court considers include: the age, education, and intelligence of the person giving consent; whether the person was advised of his constitutional rights; the length of detention prior to giving consent; whether there was any physical coercion, and whether the person was in custody. Id.
 
 
 12
 Whether a consent to search is voluntary is a question of fact, which we review for clear error. United States v. Chan, No 97-3073, slip op at 2 (7th Cir. Feb. 19, 1998). Giving due deference to the district court's factual findings in the context of a suppression motion, see United States v. Stribling, 94 F.3d 321, 323) (7th Cir.1996), we conclude that the district court did not clearly err in its determination that Fontanez voluntarily gave consent to search P & R Auto Repair
 
 
 13
 The district court based its findings on the credibility of Agent Zamora's hearing testimony. The district court concluded that the agents went into the repair shop with their guns drawn fearing violence due to a past investigation revealing a gun in the shop The court found that the DEA agents completed a protective sweep after which they lowered their guns and seated Fontanez at his desk. The court found that Zamora read Fontanez both his Miranda rights and the consent form in English and Spanish. The court also found that after the consent form was signed, the agents asked about drugs and Fontanez indicated that there were some drugs in the desk. A police dog confirmed the presence of drugs and the agents removed a package containing cocaine from the desk. After the agents removed the drugs from the desk, Fontanez asked for an attorney, after which the agents did not ask any more questions
 
 
 14
 On the other hand, the district court found that Fontanez's statements were inconsistent, including his denial of being read his Miranda rights, his ambiguous testimony on the chronology of the events during the search, and his uncertainty as to whether he signed a consent form Furthermore, the court did not give credit to Fontanez's claim that he was under the influence of drugs and that this influenced his consent
 
 
 15
 A district court's findings based on credibility determinations are virtually non-reviewable under the clear error standard. United States v. Hickok, 77 F.3d 992, 1007 (7th Cir.), cert. denied, 517 U.S. 1200, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996) (citation omitted). The district court believed Agent Zamora and did not believe Fontanez. Therefore, the district court judgment is
 
 
 16
 AFFIRMED.