**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Antowine MITCHELL, Defendant–Appellant.**

**No. 98–3172.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1999.

Decided May 24, 1999.

**906**

Paul Kanter (argued), Thomas P. Schneider, Office of United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Michael Holzman, Rosen & Holzman, Waukesha, WI, for Defendant–Appellant.

Before CUMMINGS,* BAUER, and EVANS, Circuit Judges.

BAUER, Circuit Judge.

Antowine Mitchell ("Mitchell") appeals his conviction for bank robbery. He maintains that: (1) the district judge should have conducted an in camera inspection of the presentence reports of three accomplice witnesses to determine whether the reports contain *Brady* material, (2) there was insufficient evidence to support the jury's verdict, (3) the testimony of four of the government's witnesses was obtained in violation of the federal anti-bribery statute, 18 U.S.C. § 201(c)(2), and (4) the district court should have reduced Mitchell's offense level by two because he was a minor participant in the offense, U.S.S.G. § 3B1.2(b). We reject these arguments and affirm the district court's judgment in all respects.

## I. BACKGROUND

On August 8, 1997, the North Shore Bank in Racine, Wisconsin was robbed. One of the robbers, Walter Williams ("Williams"), handed a teller a note that said "give me the money or I'll shoot you don't do anything stupid." The teller gave him approximately five thousand dollars, and he left the bank. Mitchell followed him out. On February 10, 1998, Mitchell was charged with one count of bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2.

The witness list at Mitchell's trial shows that there is indeed no honor among thieves. Williams, who pled guilty to the North Shore Bank robbery, testified that on August 8, 1997, he, Bridget Womack ("Womack"), and Mitchell drove to the North Shore Bank and parked across the street. Womack then wrote out two demand notes and gave one each to Williams and Mitchell. The plan was for Williams and Mitchell to approach two tellers simultaneously and present the demand notes. Williams and Mitchell left the car and went into the bank carrying the demand notes. Because the bank was very busy, however, Mitchell was left standing at a service counter while Williams approached a teller. After the teller gave Williams the money, he and Mitchell left the bank and ran to the car where Womack was waiting. The money was divided up a short time later.

Womack testified that she, Williams, and Mitchell had robbed the North Shore Bank on August 8, 1997. She also testified that she wrote out two demand notes, that Williams and Mitchell entered the bank with the notes intending to approach two tellers at once, and that Williams and Mitchell told her that only Williams had approached a teller because the bank had been so busy.

Natasha Williams testified that her husband, Williams, as well as Womack and Mitchell drove off together in two cars on the morning of August 8, 1997. She also testified that Williams arrived home at

---

* Judge Cummings participated in this case through oral argument; however, he died on April 24, 1999.

2:00 a.m. the next morning accompanied by Mitchell.

Finally, Joshua Taylor ("Taylor") testified that Mitchell had discussed the bank robbery with him while the two were in jail together. Mitchell told Taylor that he went into a bank with his friend in order to help his friend rob the bank, but did not end up approaching a teller. Mitchell also told Taylor that he acted as a lookout during the robbery.

When Mitchell found out that his accomplices would be testifying against him, he requested that the district judge review their presentence reports in camera for impeachment material. The district judge denied the motion. (Order of April 15, 1998.) Nonetheless, Mitchell did not lack impeachment material. For example, at the time of Mitchell's trial, Williams, Natasha Williams, Womack, and Taylor were each bound by plea agreements that required that they provide substantial assistance to the government. All four witnesses testified that they had not been promised anything by the government in return for their testimony, but that they hoped that their cooperation would be considered at their own sentencing hearings. All the relevant plea agreements were introduced into evidence at trial.

After a five day trial, the jury found Mitchell guilty of the single count of bank robbery. On August 17, 1998, the judge sentenced Mitchell to eighty-five months of imprisonment. This appeal followed.

## II. DISCUSSION

### A. In Camera Inspection of Presentence Reports

■ Mitchell challenges the district court's refusal to conduct an in camera inspection of the presentence reports of Williams, Natasha Williams, and Womack. Mitchell argues that such an inspection was required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because an inspection may have turned up impeachment information, such as inconsistent or false statements concerning the North Shore Bank robbery, and/or information concerning the criminal records of the witnesses. We review the district judge's refusal to inspect the documents for abuse of discretion.

■ In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87, 83 S.Ct. at 1196–97. Impeachment evidence, as well as exculpatory evidence, falls within this rule. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *United States v. Boyd*, 55 F.3d 239, 244 (7th Cir.1995). Finally, we have noted that "[g]enerally, presentence reports are helpful in effectively cross-examining witnesses because these reports may contain impeachment material." *United States v. Canino*, 949 F.2d 928, 942 (7th Cir.1991). Thus, Mitchell argues that the district judge was required to conduct an in camera inspection of the presentence reports of the government's accomplice-witnesses in order to determine whether the reports contained any impeachment material.

■ Mitchell's argument is misguided. As we have explained before, a "due process standard which is satisfied by mere speculation would convert *Brady* into a discovery device and impose an undue burden upon the district court." *United States v. Morris*, 957 F.2d 1391, 1403 (7th Cir.1992) (quoting *United States v. Navarro*, 737 F.2d 625, 631 (7th Cir.1984)). It is simply asking too much of district court judges to require that they review the presentence reports of all witnesses when there is no particular indication that the reports contain *Brady* material. In a drug conspiracy case, such a rule could easily result in the judge being obligated to root through the presentence reports of twenty

coconspirator witnesses. For this reason, "[m]ere speculation that a government file may contain *Brady* material is not sufficient to require a remand for in camera inspection, much less reversal for a new trial." *Id.*

We have been guided by this principle in several cases. In *Morris*, we held that the district judge was not required to conduct an in camera review of FBI reports on a government witness because the defendant could not offer anything beyond speculation to indicate that the reports contained *Brady* information and because the government claimed that it had turned over all *Brady* material. 957 F.2d at 1402. In *United States v. Andrus*, we held that the district judge was not obligated to examine the personnel files of law enforcement witnesses when there was no suggestion that the files contained any impeachment material. 775 F.2d 825, 843 (7th Cir.1985). Finally, in *United States v. Navarro*, we held that the district court was not required to examine the INS file of an informant-witness when the defendant offered nothing more than speculation that the file contained evidence of a cooperation agreement. 737 F.2d at 631–32. Similarly, Local Rule 20.01 for the Eastern District of Wisconsin, which constrained the government in this case, states that a presentence report may only be disclosed to someone other than the subject of the report when the person requesting the report establishes "with particularity the need for specified information contained in [the report]." E.D. Wis. R. 20.01.

Mitchell's case closely parallels *Morris*, *Andrus*, and *Navarro*. There is no indication that the presentence reports of Williams, Natasha Williams, and Womack contain undisclosed *Brady* material. Furthermore, the district judge found that the government was "well aware of its obligations under *Brady*." (Order of April 15,

1998.) In addition, as the magistrate judge noted, the government's open file policy provides defendants with "more discovery materials than the defendant would be entitled to obtain under strict adherence to the federal rules."[1] (Order of March 25, 1998.) Under these circumstances, the district judge concluded that there was no need to examine the presentence reports in camera. (Order of April 15, 1998.) We are inclined to agree.

■ Mitchell's citations to *United States v. Anderson*, 724 F.2d 596 (7th Cir.1984), and *Canino*, 949 F.2d 928, do not persuade us otherwise. Neither case announces an absolute requirement that district judges examine witnesses' presentence reports. In *Anderson*, the defendant sought review of a witness' presentence report specifically to determine when the witness had stopped using heroin, and to determine whether the witness' use of heroin had had deleterious effects on his memory. *Anderson*, 724 F.2d at 597. We held that a trial judge has no duty to disclose presentence reports about a witness at the "mere request of a criminal defendant," but that "[w]hen a defendant suspects that a witness' presentence report contains impeachment material, [the defendant] should request the trial court to make an in camera examination of the report." *Id.* at 598. Several years later, in *Canino*, we approved the district court's decision to review documents in camera "for the purpose of finding impeachment material useful in cross-examining the government's witnesses." 949 F.2d at 942. However, we rejected Canino's contention that the district judge was required to review the presentence reports prior to cross-examination. *Id.* at 943. While both *Anderson* and *Canino* authorize in camera review, and even suggest that in camera review is good practice, neither case contradicts our earlier statement that "a *Brady* request does not entitle a criminal defendant to

1. The government informs us that "[i]ncluded within the material disclosed pursuant to [the open file policy of the U.S. Attorney's Office for the Eastern District of Wisconsin] is all material discoverable under Rule 16 of the Federal Rules of Criminal Procedure and exculpatory material pursuant to *Brady* and its progeny." (Appellee's Brief at 13.)

embark upon an unwarranted fishing expedition through government files, nor does it mandate that a trial judge conduct an in camera inspection of the government's files in every case." *United States v. Phillips,* 854 F.2d 273, 278 (7th Cir.1988). While the proper procedure for a defendant is to request an in camera inspection if the defendant suspects that *Brady* material has not been disclosed, the defendant is not entitled to have his request granted absent some indication that the report contains impeachment material of the kind requested. Therefore, the district judge did not abuse his discretion when he refused to review the presentence reports.

## B. Government Agreements with Witnesses

Mitchell contends that the government's agreements with Williams, Natasha Williams, Womack, and Taylor violate the federal antibribery statute, 18 U.S.C. § 201(c), and that any testimony resulting from the agreements should have been suppressed. The anti-bribery statute makes it illegal to "directly or indirectly, give[ ], offer[ ] or promise[ ] anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court." 18 U.S.C. § 201(c)(2). Mitchell argues that when the government promises to file a motion for a downward departure if a witness provides substantial assistance, the government has promised something "of value" in exchange for testimony. This argument has become popular since the Tenth Circuit briefly adopted it in *United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998). Although Mitchell acknowledges that *Singleton* was immediately stayed and subsequently withdrawn, *United States v. Singleton,* 165 F.3d 1297 (10th Cir.1999) *(en banc),* he urges us to adopt *Singleton 's* rationale. About a month after Mitchell's argument before this court, however, we joined a stampede of circuits in rejecting *Singleton 's* holding. *See United States v. Condon,* 170 F.3d 687 (7th Cir. 1999) (collecting cases). Having firmly rejected *Singleton,* we likewise reject Mitchell's arguments on this score.

## C. Sufficiency of the Evidence

In a reprise of his argument that the plea agreements of Williams, Natasha Williams, Womack, and Taylor violate the federal anti-bribery statute, Mitchell argues that there was insufficient evidence to support his conviction because the only evidence offered at trial was inconsistent testimony given in the hope of receiving a lower sentence. As we have often explained, "when we review for sufficiency of evidence, the appellant 'faces a nearly insurmountable hurdle ... [in that] we consider the evidence in the light most favorable to the Government, defer to the credibility determination of the jury, and overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.'" *United States v. Szarwark,* 168 F.3d 993, 995 (7th Cir.1999) (quoting *United States v. Moore,* 115 F.3d 1348, 1363 (7th Cir. 1997)).

Under this standard, Mitchell's claim clearly fails. By Mitchell's own admission, the plea agreements of the witnesses were entered into evidence and each witness testified that he or she hoped to obtain a reduced sentence by testifying. The jury was presented with impeaching evidence and chose to credit the witnesses' testimony anyway. That was their right. *United States v. Alcantar,* 83 F.3d 185, 189 (7th Cir.1996) ("When a jury has chosen to credit crucial testimony with full knowledge of the many faults of the witness providing it, we have no basis to interfere."). Given the testimony of Williams, Natasha Williams, Womack, and Taylor, there was clearly sufficient evidence from which the jury could have found guilt beyond a reasonable doubt.

## D. Minor Participant Reduction

Mitchell's final contention on appeal is that the district court should have

decreased his offense level by two because he was a minor participant in the offense. U.S.S.G. § 3B1.2(b). A minor participant is "any participant who is less culpable than most other participants." U.S.S.G. § 3B1.2(b), Application Note 3. It is the defendant's burden to show by a preponderance of the evidence that he is entitled to a minor participant sentence reduction. *United States v. Brisk*, 171 F.3d 514, 526 (7th Cir.1999). The district court held that Mitchell had not met this burden. We review for clear error.

Mitchell argues that he falls within the definition of a minor participant because he did not plan the robbery and did nothing to help execute it. He emphasizes that he did not even approach a teller. We are not persuaded. Mitchell had full knowledge of the plan to rob the North Shore Bank. He accompanied Williams into the bank for the purpose of committing the robbery. He took a note with him that threatened violence and demanded money. It just so happened that Mitchell found the bank too crowded to allow him to present his note to a teller at the same time as his accomplice. The Sentencing Guidelines provide for a lesser punishment when the defendant is less *culpable* than other participants in the offense. Fortuity has no bearing on culpability. Therefore, Mitchell has not shown that he is less culpable than Williams and is not entitled to a minor participant sentence reduction. *See United States v. Covarrubias*, 65 F.3d 1362 (7th Cir.1995) (defendant not entitled to a minor participant reduction when plan to distribute marijuana was thwarted by a traffic stop that resulted in the plan being discovered).

## Conclusion

For the foregoing reasons, the district court's judgment is Affirmed in all respects.