**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jonathon KINZER, Defendant–Appellant.**

No. 01–1088.

United States Court of Appeals, Seventh Circuit.

Argued June 13, 2001.

Decided June 27, 2001.

Before BAUER, COFFEY, and KANNE, Circuit Judges.

ORDER

Jonathon Kinzer and two codefendants were indicted for conspiring to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). After pleading guilty, Kinzer was sentenced to 84 months' imprisonment, the lowest possible sentence within the applicable guideline range, and four years' supervised release. In this appeal, Kinzer challenges 1) the district court's determination that Kinzer did not qualify for a two-level downward adjustment pursuant to U.S.S.G. § 3B1.2(b) for being a "minor participant" in the conspiracy, and 2) the constitutionality of the drug equivalency tables contained in U.S.S.G. § 2D1.1. We affirm.

## BACKGROUND

From October 1998 through March 1999, Kinzer, John Coito, Joseph Barr and others were involved in a conspiracy to distribute methamphetamine. Under the conspiracy, Kinzer acted as a middleman for shipments of methamphetamine from Coito to Barr. Coito would ship drugs to fictitious companies via hotels, at which the drugs would be picked up by Kinzer.

In preparation for one such shipment, Kinzer checked into the Comfort Inn in Champaign, Illinois on October 27, 1998 under the name "Quality Construction." Kinzer repeatedly checked with the hotel staff to see if a package had arrived for Quality Construction. When the package did not arrive on October 28, Kinzer stayed at the hotel for an extra night, since the hotel allowed only registered guests to receive packages. The package did not arrive, and Kinzer checked out of the hotel on October 29.

Kinzer's package did not arrive because it had been confiscated by the DEA. On October 28, United Parcel Service in Chula Vista, California had received a suspicious package addressed to Quality Construction, c/o the Comfort Inn in Champaign, Illinois. United Parcel called the DEA, which retrieved the package and later determined that it contained 194.7 grams of methamphetamine (29.2 grams of methamphetamine actual[1]). Although the package contained a fictitious return address, DEA agents traced the package back to Coito. DEA agents also learned that Coito had rented a post office box in Bonita, California; between March 1998 and February 1999, this box had received 18 express mail packages from addresses in Decatur, Illinois. Both Kinzer and Barr sent packages to Coito at the post office box.

Kinzer stipulated sending one such package that postal inspectors confiscated in February, 1999; this package contained $10,800 in cash.

On March 2, 1999, DEA agents executed a search warrant at Coito's residence. Agents recovered 5.6 grams of methamphetamine (1.6 grams of methamphetamine actual), among other things. Agents also discovered addresses to several hotels in Illinois and Missouri, with specific companies designated at particular hotels. The DEA was able to determine that Kinzer had stayed at several of these hotels during the conspiracy. On May 29, 1999, Illinois State Police executed a search warrant at Barr's residence in Decatur, Illinois, where Kinzer was temporarily residing. While executing the search warrant, agents discovered suspected cannabis and cocaine, as well as currency and numerous firearms. Kinzer was arrested at that time.

On August 17, 2000, pursuant to a written agreement, Kinzer pleaded guilty to one count of conspiring to distribute methamphetamine. At sentencing, the district court rejected Kinzer's arguments that the drug equivalency tables in U.S.S.G. § 2D1.1 create irrational classifications in violation of the Due Process and Equal Protection clauses, and that he should be allowed a two-level reduction in his offense level pursuant to U.S.S.G. § 3B1.2 because he was only a minor participant in the crime. The court then found that Kinzer was responsible for 200.3 grams of methamphetamine (30.8 grams of methamphetamine actual)—the 194.7 grams contained in the intercepted package that Coito shipped to Kinzer and the 5.6 grams seized from Coito's residence. The district court

---

**1.** "Methamphetamine (actual)" refers to the actual weight of the controlled substance itself contained in a mixture. Thus, a mixture weighing 10 grams containing methamphet- amine at 50% purity contains 5 grams of methamphetamine (actual). *See United States v. Turner,* 93 F.3d 276, 287 (7th Cir.1996).

sentenced Kinzer to 84 months in prison, the bottom of the relevant guideline range.

## ANALYSIS

### 1. *Downward Departure For Minor Participant Status*

Kinzer first argues, in essence, that he was a minor participant in the conspiracy because he was little more than a courier for Coito and Barr, and that the district court erred by failing to depart downward pursuant to U.S.S.G. § 3B1.2. Because a district court's decision to deny a downward departure pursuant to § 3B1.2 depends heavily on the facts of the case, we review such a decision for clear error. *United States v. Mojica,* 185 F.3d 780, 790–91 (7th Cir.1999). However, the district court's legal conclusions, including interpretations of the guidelines, are reviewed *de novo. Id.* at 791.

Under U.S.S.G. § 3B1.2(b), a defendant qualifies for a 2–level decrease in his offense level if he was a "minor participant" in the criminal activity. A "minor participant" is defined as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment (n.3). In a case involving a conspiracy, an offense level reduction under § 3B1.2 is appropriate only if the defendant was substantially less culpable than the conspiracy's other participants. *United States v. Montenegro,* 231 F.3d 389, 395–96 (7th Cir. 2000). The defendant bears the burden of proving, by a preponderance of the evidence, that he is entitled to a minor participant reduction. *United States v. Mitchell,* 178 F.3d 904, 910 (7th Cir.1999). Downward adjustments for minimal participant status should be used "infrequently." U.S.S.G. § 3B1.2, comment (n.2).

That Kinzer may have acted only as a courier does not, in and of itself, entitle him to a minor role adjustment. *United States v. McClinton,* 135 F.3d 1178, 1190 (7th Cir.1998). Couriers play an important role in the drug distribution scheme. *United States v. Hamzat,* 217 F.3d 494, 497 (7th Cir.2000). In determining whether a minor role adjustment is appropriate here, we consider whether Kinzer was substantially less culpable than Coito and Barr. *Montenegro,* 231 F.3d at 395–96.

A review of the evidence as summarized in Kinzer's plea agreement and PSR shows that the district court did not clearly err in denying Kinzer's request for a minor role adjustment. Kinzer was an integral part of the conspiracy; he was the middleman responsible for receiving shipments of methamphetamine from Coito and delivering it to Barr. Kinzer stipulated in his plea agreement that he was a part of the conspiracy, and that Coito furnished drugs to him and Barr via Express Mail or another shipping service. Kinzer further stipulated that Coito sent a package containing 194.7 grams of methamphetamine via UPS on or about October 27, 1998 to the Comfort Inn in Champaign, Illinois, addressed to "Quality Construction." About that time, Kinzer checked into the Comfort Inn in Champaign under the name "Quality Construction" and advised motel employees that he was awaiting a package. Kinzer even extended his stay an extra day when the package did not arrive as planned. Kinzer's PSR further shows that the October transaction was not the only time Kinzer received packages of drugs under an assumed name at a motel—a search of Coito's home turned up a list of company names with addresses at various motels in Illinois and Missouri, and Kinzer was established to have stayed at three of those hotels. Additionally, Kinzer stipulated in his plea agreement that he sent an express mail package containing $10,800 cash to Coito in February 1999.

Though he may have acted as a courier, "[courier] status does not automatically

make [Kinzer] less culpable than the other participants, especially when more then one drug transaction occurred." *McClinton*, 135 F.3d at 1190. The evidence indicates that Kinzer may have received at least three shipments of drugs from Coito in addition to the package intercepted by the DEA. Kinzer also acknowledged in his plea agreement that he was responsible for sending payment for methamphetamine to Coito in California, including $10,800 in February 1999. These facts demonstrate that he played a critical, rather than a minor, role in the conspiracy. Even if Kinzer played a lesser role than his co-conspirators—a fact not established by Kinzer—that does not mean that the role he played is minor. "[T]he fact that one plays a much lesser role than another does not mean that one is a minor participant." *United States v. Soto*, 48 F.3d 1415, 1423 (7th Cir.1995) (quoting *United States v. Kerr*, 13 F.3d 203, 206 (7th Cir.1993)). We agree with the district court that Kinzer played more than a minor role in the conspiracy and thus was not entitled to a two-point reduction pursuant to U.S.S.G. § 3B1.2.

2. *Constitutionality of Drug Equivalency Tables*

Kinzer also argues that the drug equivalency tables in § 2D1.1 are unconstitutional. But Kinzer's brief is devoid of any legal argument or factual support for his contention and therefore he waived this argument. *United States v. Hook*, 195 F.3d 299, 309–10 (7th Cir.1999), *cert. denied*, 529 U.S. 1082, 120 S.Ct. 1707, 146 L.Ed.2d 510 (2000); *see also Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir.1986) ("It is not the obligation of this court to research and construct the legal arguments open to the parties, especially when

they are represented by counsel."). In any event, this Circuit's prior decisions foreclose his argument. *See United States v. Turner*, 93 F.3d 276, 286–87 (7th Cir. 1996) (finding that 10:1 disparity in punishment between methamphetamine (actual) and substances containing methamphetamine was supported by rational basis and did not violate the Due Process or Equal Protection clauses); *United States v. Smith*, 34 F.3d 514, 525 (7th Cir.1994) (for the same reason that disparate treatment of crack and cocaine does not violate the Due Process and Equal Protection clauses, that treatment does not violate the Eight Amendment).

We therefore AFFIRM the judgment of the district court.