**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Terrance L. RILEY, also known as Terry L. Riley, also known as Quantrell Ward, Defendant–Appellant.**

**No. 01–1727.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 29, 2002.

Decided March 15, 2002.

Before COFFEY, KANNE, and WILLIAMS, Circuit Judges.

### ORDER

Terrance Riley was tried on one count of possession with intent to distribute crack, 21 U.S.C. § 841(a)(1), and one count of possession of firearms as a convicted felon, 21 U.S.C. § 851(a)(1). Riley was acquitted on the gun charge, but convicted on the drug charge, and sentenced to 250 months' imprisonment to be followed by 5 years' supervised release. Riley challenges his conviction, claiming that insufficient evidence existed to prove that he possessed the crack, and that the district court erred in failing to instruct the jury to disregard a detective's testimony that Riley admitted possessing the crack. We affirm.

## I. BACKGROUND

On three occasions between May and August 1999, in the course of a narcotics investigation, detectives from the Allen County Police Department searched the trash behind a house in Fort Wayne, Indiana. The house was owned by Barbara Harris, Riley's co-defendant who was indicted with him but severed for trial. The detectives found plant material later identified as marijuana and implements of the drug trade bearing cocaine residue (*i.e.*, plastic bags, packaging materials, stirring sticks made from hangers). Detective Dean Huey testified at trial that he also found a Styrofoam container of spoiled food bearing the name "Terry." Based on the trash search, detectives obtained a search warrant for Harris's house.

On August 27, 1999, at 1:30 in the afternoon, officers executed the search warrant. The first officer to enter the house, Dave Gladieux, saw a man and a woman later identified as Riley and Harris standing in a bedroom doorway. Riley was wearing shorts with no shirt, socks or shoes, and Harris was wearing only her panties. Riley identified himself to officers as Quantrell Ward and showed them an identification card bearing that name and his picture. The officers told Riley that they had to take him to "lockup" to be fingerprinted, and that they had called for a drug-sniffing dog. Officers testified at trial that Riley responded by becoming nervous and telling them that he was ready to go to lockup.

Once the drug-dog arrived, officers searched the bedroom and found a container with 84.7 grams of crack in plain sight on the floor. The crack appeared freshly cooked; it had an oatmeal-like appearance, was warm to the touch, and was being cooled under a fan. Among other things, officers also found two small bags of marijuana, $21,841 in mostly 20's, 50's and 100's bundled in $1,000 increments under a blanket on the bed, two handguns, and a home detention card from Allen County Community Corrections in the name of Terrance Riley that was located among documents belonging to Harris. A man's clothes and shoes were in the bedroom closet.

Elsewhere in the house officers found various implements of the drug trade bearing cocaine residue (*i.e.*, wire hanger stirring stick, plastic bags, scales), another handgun, and numerous pictures throughout the house of Harris and Riley together. In addition, Riley had $433 and a cellular telephone in his pocket, and Harris had $1,800 in her purse. The police did not check for fingerprints on any of the items they found during the searches of the house and the trash.

Riley's mother, Anita Riley, testified at trial that Harris and Riley had a young daughter who lived with Harris. Anita also testified that Riley lived with her and not with Harris, and that Quantrell Ward (the name Riley initially gave police) was Harris's cousin.

## II. ANALYSIS

### A. Sufficiency of the Evidence

On appeal Riley principally contends that the government presented insufficient evidence to prove that he possessed the crack found in the bedroom of Harris's house because, Riley argues, the government proved only that he was present in the house at the time of the search. At trial Riley moved for a directed verdict when the government rested and at the close of the evidence. Reviewing the evidence in the light most favorable to the government, we will uphold a conviction if any rational jury could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Hunter*, 145 F.3d 946, 949 (1998).

██ Under § 841(a)(1) possession can be either actual or constructive, and constructive possession can be established through circumstantial evidence. *United States v. Richardson,* 208 F.3d 626, 632 (7th Cir.), *cert. denied,* 531 U.S. 910, 121 S.Ct. 259, 148 L.Ed.2d 188 (2000). Constructive possession exists where the evidence demonstrates ownership, dominion, authority, or control. *Id.* But a defendant's mere proximity to drugs, without more, is not enough to establish constructive possession; the government must establish a nexus between the defendant and the drugs that distinguishes him from an innocent bystander. *United States v. Hunte,* 196 F.3d 687, 692 (7th Cir.1999).

██ The thrust of Riley's argument on appeal is that he can explain away his connection to Harris's house and the crack because he and Harris have a child together, which he argues gave him a benign reason for being in the house. But the government's proof need not exclude every innocent explanation so long as the total evidence permits a finding of guilt beyond a reasonable doubt; the trier of fact is empowered to draw inferences and choose among conflicting constructions of the evidence. *United States v. Harris,* 271 F.3d 690, 703–04 (7th Cir.2001).

██ That is the case here; the government presented substantial evidence linking Riley to the crack. Riley's identification card from Allen County Community Corrections was in the same room where he was standing when police entered the house, and where police found freshly cooked crack, guns, and a large sum of cash. *See Richardson,* 208 F.3d at 632 (constructive possession of drugs and guns where defendant was present when drugs found, had substantial connection to the house, drugs were in plain view, and guns were found with defendant's personal items); *United States v. Kitchen,* 57 F.3d 516, 519–21 (7th Cir.1995) (constructive

possession where defendant's personal items found in same room in his girlfriend's home as guns); *see also United States v. Dunlap,* 28 F.3d 823, 826 (8th Cir.1994) ("Coleman's presence in the apartment [where the cocaine was] with a gun, his hat in the kitchen, and the fact that he was brought [there at the resident's] request, allows an inference that Coleman had constructive possession of the cocaine."). Riley also lied to police about his identity and became nervous when police told him that they had called for a drug-dog. *See United States v. Stribling,* 94 F.3d 321, 325 (7th Cir.1996) (jury entitled to infer possession from defendant's lies to police and nervous behavior when asked about drugs); *United States v. Covarrubias,* 65 F.3d 1362, 1369 (7th Cir. 1995) (same). A detective testified to finding a container bearing the name "Terry" in the trash behind Harris's house, there were pictures of Riley and Harris together throughout the house, a man's clothes and shoes were in the bedroom closet, and Riley and Harris were half-dressed in the bedroom when police arrived (in other words, Riley was not the casual visitor that he suggests). The government's evidence was more than sufficient for a rational jury to conclude that Riley had dominion or control over the crack in the bedroom.

### B. Testimony Regarding Riley's "Admission"

Riley's remaining contention on appeal is that the district court committed reversible error in failing to *sua sponte* instruct the jury to disregard Detective Allen Wise's testimony regarding a statement Riley made during a pretrial conference.

### 1. The Testimony at Issue

During the final pretrial conference in this case Riley told the court he wanted to plead guilty, which prompted his attorney

and the court to admonish him not to speak. Riley responded by confessing his guilt:

I have an obligation to the Court to say that Miss Harris had no intention—I mean no—nothing to do with this case that she's involved with, and I acted alone in this, you know what I'm saying, with (Unintelligible) myself, and if that is an admission of guilt, then I plead guilty.

The court then directed the parties to confer about the matter, and scheduled a trial date. The record contains no evidence that Riley moved in limine to suppress the confession.

At trial, during the government's direct examination of Detective Wise, the following colloquy took place:

GOVERNMENT: Now, are you aware of any statements that the defendant had made with regard to his admission to this particular crack cocaine?

DETECTIVE WISE: Yes.

GOVERNMENT: And when was that? When was the statement made?

DETECTIVE WISE: April 27.

GOVERNMENT: Of this year?

DETECTIVE WISE: 2000 in court.

At that point the court conducted a bench conference outside the jury's hearing at Riley's request. Riley objected to the detective's testimony, arguing that he had not been advised at the pretrial conference that his statements could be used against him. The district court sustained Riley's objection and excluded the confession.[1]

After the bench conference, the court did not inform the jury of the ruling or instruct the jury to disregard Detective Wise's testimony. At the end of the trial Riley objected unsuccessfully to a pattern jury instruction on weighing a defendant's out-of-court statements[2] on the basis that the instruction would draw undue attention to Detective Wise's testimony about the Riley's confession. Nonetheless, Riley never requested that the court instruct the jury to disregard Detective Wise's testimony or objected when the court failed to do so *sua sponte*.

### 2. Riley's Waiver/Forfeiture of Appellate Review.

■ Riley waived appellate review of the district court's failure to give an immediate curative instruction because he failed to request one. *See United States v. Salerno*, 108 F.3d 730, 740 (7th Cir.1997) (where defendant was "well aware" of need for limiting instruction concerning evidence admitted over his objection, defendant waived the issue in failing to request the instruction); *United States v. Espino*, 32 F.3d 253, 258 (7th Cir.1994) (defendant waived claim that court should have given limiting instruction by failing to request the instruction at trial).

---

1. Although the government urges us to conclude the district court erred in excluding Riley's confession, we decline the invitation. The district court properly excluded the confession because Riley made it during a pretrial conference, and it was not then reduced to writing and signed by him as required under Federal Rule of Criminal Procedure 17.1.

2. The instruction Riley objected to provided: Evidence has been received concerning a statement said to have been made by the defendant. It is for you to determine whether the defendant did, in fact, make the statement. If you find that the defendant did make the statement, then you must determine what weight, if any, you feel the statement deserved. In determining what weight, if any, should be given the statement, you should consider all matters in evidence having to do with the statement including those concerning the defendant's personal characteristics and the conditions under which the statement was made.

Even if Riley's failure to request a curative instruction amounted only to forfeiture, the district court did not commit plain error in failing to give the instruction *sua sponte. See Salerno*, 108 F.3d at 740 (plain error analysis applies to forfeiture). Under the plain error doctrine, we will reverse only where the trial court's error is "clear, prejudicial, and affects substantial rights." *United States v. Carrillo*, 269 F.3d 761, 768 (7th Cir.2001). Riley cannot satisfy this standard. His argument rests on the government's use of the word "admission" in its question to Detective Wise; he says that it "carried the day" for the government. But Detective Wise's testimony was ambiguous at best. He only testified that Riley made some form of statement regarding an "admission." The jury never heard the substance of Riley's confession. Thus it is altogether unclear from the detective's testimony that he was about to testify that Riley had admitted his guilt. The jury heard evidence about other statements Riley made, including that he told police that he was ready to go to lockup when police told him they had called for a drug dog. The jury could have attributed Detective Wise's testimony to that statement, which arguably demonstrates that Riley had a guilty mind.

AFFIRMED.